OPINION
{¶ 1} Defendant-appellant Larry Nalls appeals a decision of the Montgomery County Court of Common Pleas which overruled his pro se application for post-conviction deoxyribonucleic acid (DNA) testing. Nalls filed his memorandum in support of his application for post-conviction DNA testing on September 20, 2004. On November 22, 2004, the State filed its responsive brief. The trial court filed its decision *Page 2 
and entry overruling Nalls' application on December 1, 2004, without affording him the right to file a reply to the State's brief. Nalls timely appealed the trial court's decision.
 {¶ 2} In State v. Nalls (Nov. 23, 2005), Montgomery App. No. 20848,2005-Ohio-6260 (hereinafter "Nalls IV"), we reversed and remanded, holding that Montgomery County's local rules afforded Nalls the right to file a reply to the State's responsive brief opposing his application for post-conviction DNA testing. Thus, the trial court should not have ruled on the merits of Nalls' application until he filed his reply brief or until his time for filing said reply had expired. Id.
 {¶ 3} Subsequently, Nalls filed a pro se reply to the State's memorandum contra to his application for DNA testing on December 30, 2005. In a written decision filed on February 27, 2006, the trial court once again overruled Nalls' application for DNA testing finding that pursuant to R.C. § 2953.74, DNA testing of the physical evidence adduced during Nalls' trial would not be "outcome determinative" of his innocence. Nalls filed a notice of appeal on April 7, 2006.
 I {¶ 4} We set forth the history of the case in Nalls IV, and now repeat it herein in pertinent part:
 {¶ 5} "In 1989, Larry Nalls was convicted of two counts of compelling a woman to engage in sexual conduct with him. This court affirmed the convictions as being supported by the evidence. State v. Nalls (Nov. 9, 1990), Montgomery App. No. 11940. However, we remanded the matter for resentencing, due to the fact that Nalls was not provided an opportunity to make a statement prior to the imposition of sentence. Id. On remand, Nalls was sentenced to prison terms `of from six to twenty- *Page 3 
five years on each conviction, the terms to run consecutively.'State v. Nalls (Nov. 7, 1991), Montgomery App. No. 12624. This court affirmed the decision of the trial court. Id.
 {¶ 6} "In 1999, Nalls filed a motion for a new trial, which was denied. The order denying his motion for a new trial was affirmed on appeal. State v. Nalls, Montgomery App. No. 19065, 2002-Ohio-2701." [hereinafter "Nalls III"] .
 {¶ 7} "Nalls's motion for a new trial was based upon the affidavits of Anthony Martin and John Perry. Martin was present, along with Nalls and [the victim], at the time of the alleged offenses. At the original trial, Martin corroborated [the victim's] testimony that she was compelled to submit to sexual acts as a result of Nalls's use of force, and threatened use of force. In his affidavits in support of the motion for a new trial, Martin averred that [the victim] had not been forced to submit, but that the sexual activity involving [the victim] was voluntary on her part." Nalls III.
 {¶ 8} "The trial court then found no need for a continuance, because, based upon the inconsistencies between Martin's trial testimony, his averments in his affidavit, and his testimony at the hearing, the trial court found Martin's testimony to be not worthy of belief. In a decision filed subsequently, the trial court overruled Nalls's motion for a new trial." Id. As noted above, we affirmed the trial court's denial of Nalls' motion for a new trial.
 {¶ 9} In the present appeal, Nalls argues that the trial court erred when it overruled his application for post-conviction DNA in which he requested that physical evidence be tested in order to exclude him as the donor of any genetic material taken from the alleged rape victim. At trial, both Nalls and the State agreed that none of *Page 4 
Nalls' DNA wold be found on the physical evidence taken from the victim, including vaginal swabs and pubic hair. The State argued that this was because the victim testified that Nalls did not ejaculate in her vagina during the rape. Nalls argued that his DNA would not be found because he was not involved in the rape of the victim.
 {¶ 10} In his application, Nalls argues that DNA testing would exclude him as a donor of any genetic material retrieved from the victim. Nalls asserts that an exclusion result, combined with Anthony Martin's recantation of his trial testimony and the fact that none of his hair was found on the victim, would be outcome determinative as contemplated by R.C. § 2953.74.
 {¶ 11} The trial court disagreed and rejected Nalls' application in a decision and entry filed on February 27, 2006. It is from this judgment that Nalls now appeals.
 II {¶ 12} Nalls' first assignment of error is as follows:
 {¶ 13} "THE TRIAL COURT HAS COMMITTED REVERSIBLE ERROR, AND HAS VIOLATED THE RIGHTS AS SECURED HIM BY THE FIRST, FIFTH, AND FOURTEENTH AMENDMENTS, WHEN IT:
 {¶ 14} "(A) FAILED TO CALL FOR OR OBTAIN AN EXPERT OPINION REGARDING THE SCIENTIFIC NATURE OF THE BIOLOGICAL AND GENETIC EVIDENCE THAT WAS AT ISSUE, BEFORE THE COURT ISSUED ITS FINAL RULING INVOLVING THAT EVIDENCE; AND/OR
 {¶ 15} "(B) FAILED TO CONDUCT A HEARING WHERE THE EXPERT OPINION OR TESTIMONY COULD BE PROPERLY PRESENTED AND CONSIDERED BY THE COURT, WHICH WOULD HAVE ASSISTED THE COURT IN *Page 5 
UNDERSTANDING THE SCIENTIFIC VALUE OF THE EVIDENCE IN RESOLVING THE QUESTIONS OF FACT, BEFORE THE COURT RENDERED ITS FINAL RULING INVOLVING THAT EVIDENCE; AND/OR
 {¶ 16} "(C) HELD THAT THE RESULTS OF ANY DNA TEST WOULD NOT BE OUTCOME DETERMINATIVE IN THIS CASE AND CAUSE."
 {¶ 17} In his first assignment, Nalls contends that the trial court erred when it (1 ) failed to obtain expert testimony with respect to his request for post-conviction DNA testing; 2) failed to conduct a hearing where such expert testimony could be heard; and 3) ultimately held that any DNA test results excluding Nalls as the donor would not be outcome determinative pursuant to R.C. § 2953.74.
 {¶ 18} R.C. 2953.74(A) provides that the trial court "has discretion on a case-by-case basis" to accept or reject an eligible inmate's application for DNA testing. Thus, we review the trial court's decision for abuse of discretion.
 {¶ 19} An abuse of discretion means more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140. When applying the abuse of discretion standard, an appellate court may not merely substitute its judgment for that of the trial court. Berk v. Mathews (1990), 53 Ohio St.3d 161, 169,559 N.E.2d 1301.
 {¶ 20} Advances in DNA testing prompted the General Assembly in 2003 to enact R.C. § 2953.71 through R.C. § 2953.83. The statutes permit an eligible prison inmate who has been convicted of a felony and who has at least a year remaining on his prison term to file with the common pleas court a post-conviction application for *Page 6 
DNA testing of biological evidence upon which no DNA test, or an inconclusive DNA test, has been conducted. See R.C. §§ 2953.71(F),2953.72(A) and (C), 2953.73(A), and 2953.74(A) and (B). The trial court may "accept" an eligible inmate's application for DNA testing only if the following factors are present: 1) biological material was collected from the crime scene of the victim(s), and the parent sample of that biological material still exists; 2) the parent sample of the biological material is sufficient, demonstrably uncorrupted, and scientifically suitable for testing; 3) the identity of the perpetrator of the charged offense was an issue at the inmate's trial; 4) a defense theory at trial was such that it would permit a conclusion that an "exclusion result would be outcome determinative"; and 5) "if DNA testing is conducted and an exclusion result is obtained, the results of the testing would be outcome determinative." See R.C. § 2953.74(B) and (C).
 {¶ 21} If any of the factors listed in R.C. 2953.74(C) is not satisfied, the court is precluded from accepting the application. "In other words, if the court finds, for example, that the identity of the perpetrator was not an issue at trial, DNA testing will not be allowed, even if all [of] the other criteria are satisfied. Likewise, if the court finds that the test would not be outcome determinative, the application must be rejected." State v. Hayden (Aug. 5, 2005), Montgomery App. No. 20747, 2005-Ohio-4025.
 {¶ 22} "Outcome determinative" is defined in the post-conviction DNA testing statutes to mean that:
 {¶ 23} "had the results of DNA testing been presented at the trial of the subject inmate requesting DNA testing and been found relevant and admissible with respect to the felony offense for which the inmate is an eligible inmate and is requesting the DNA *Page 7 
testing * * *, no reasonable factfinder would have found the inmate guilty of that offense * * *." R.C. § 2953.71(L).
 {¶ 24} In its written decision overruling Nalls' application for post-conviction DNA testing, the trial court stated in pertinent part:
 {¶ 25} "Defendant [Nalls] was found guilty of two counts of rape in November, 1989. At the trial[,] the victim testified that she was forced to have oral sex with the defendant and the defendant attempted vaginal sex but did not ejaculate in her vagina. The parties stipulated to lab reports (not DNA) which proved negative for defendant's semen and that issue was argued to the factfinder. If anything, the testimony at trial showed that the semen of a witness, Tony Martin, would be found in the victim as he and the victim admitted to sexual activity that occurred simultaneous with the offending sexual activity."
 {¶ 26} "* * * The lab report presented to the factfinder showed no evidence of sexual activity by the defendant. A DNA test that comes back negative as to the defendant would therefore present an identical outcome. Should a DNA test confirm that Tony Martin had sex with the victim, likewise, the outcome would be no different. * * * The Court believes the previous factfinder to be reasonable. Therefore, the outcome [of the trial] would be no different regardless of the results of the DNA test."
 {¶ 27} After a thorough review of the record and the arguments submitted by both parties, we agree with the trial court and hold that DNA testing excluding Nalls as a donor would not be outcome determinative as contemplated under R.C. § 2953.74. In fact, an exclusion result at this juncture would only reinforce what both Nalls and the State seemed to agree on at trial, namely, that there was no physical evidence linking *Page 8 
Nalls to the rape of the victim. Rather, the evidence used to convict Nalls was the testimony of his alleged accomplice, Tony Martin, and the victim, herself. Although Martin later recanted his testimony, the trial court found, and we agree, that in light of the facts surrounding the recantation, Martin was not credible.
 {¶ 28} Lastly, Nalls' argument that expert testimony would have demonstrated that had he actually raped the victim that some of his DNA would have been left at the scene is without merit. Nalls' assertion that the trial court had some duty to enlist the aid of an expert in rape-scene DNA analysis in order to help in determining whether said analysis would be outcome determinative is not supported by R.C. § 2953.73(D), which states in pertinent part:
 {¶ 29} "The court shall make the determination in accordance with the criteria and procedures set forth in sections 2953.74 to 2953.81 of the Revised Code and, in making the determination, shall consider the application, the supporting affidavits, and the documentary evidence and, in addition to those materials, shall consider all the files and records pertaining to the proceedings against the applicant, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript and all responses to the application filed under division (C) of this section by a prosecuting attorney or the attorney general * * *."
 {¶ 30} As the State points out, Nalls' claim that an exclusion result would have completely discredited all of the prosecution's witnesses because the rapist would certainly have left behind some DNA is mere speculation. Speculation is insufficient to support a post-conviction DNA testing application. Pursuant to R.C. § 2953.73(D), the burden is on the applicant to provide the court with supporting affidavits and other *Page 9 
documentary evidence which clearly demonstrates that the applicant is entitled to DNA testing. Nalls has not met that burden. An exclusion result at this juncture would only demonstrate what the trial court was aware of at trial, namely, that there was no physical evidence linking Nalls to the rape. Thus, the trial court did not abuse its discretion when it overruled Nalls' application for post-conviction DNA testing without affording him a hearing.
 {¶ 31} Nalls' first assignment of error is overruled.
 III {¶ 32} Nalls' final assignment of error is as follows:
 {¶ 33} "THE TRIAL COURT HAS COMMITTED REVERSIBLE ERROR, AND HAS VIOLATED THE APPELLANT'S RIGHTS AS SECURED HIM BY THE FIFTH AND FOURTEENTH AMENDMENTS WHEN IT FAILED TO CONSIDER APPELLANT'S BRIEF, THEN ISSUING A CORBON [sic] TO APPELLANT OF TRIAL COURT'S PREVIOUS DECISION."
 {¶ 34} Pursuant to our holding in Nails IV, we reversed the ruling of the trial court which overruled Nalls' original application for post-conviction DNA testing because the court failed to provide Nalls with the opportunity to file a reply brief to the State's memorandum contra. The matter was remanded, and Nalls was afforded the right to file a reply. He did so, but the trial court still overruled his application. In this assignment, Nalls contends that the trial court erred in failing to consider the merits of his reply brief. In support of this assertion, Nalls points out that the court made no mention of the arguments contained in the reply brief and essentially filed a copy of its original decision overruling his application for post-conviction DNA testing. *Page 10 
 {¶ 35} As previously stated, the trial court overruled Nalls' application because it held that a test result excluding Nalls as a DNA donor would not be outcome determinative pursuant to R.C. § 2953.74. Simply put, none of the arguments advanced in Nalls' reply brief would have affected the trial court's finding in the first instance. Other than the fact that the trial court filed a copy of it original ruling in response to his reply brief, Nalls cannot direct us to any additional evidence that the court failed to consider the arguments in his brief.
 {¶ 36} Nalls' final assignment of error is overruled.
 IV {¶ 37} All of Nalls' assignments of error having been overruled, the judgment of the trial court overruling his application for post-conviction DNA testing is affirmed.
 WOLFF, P.J. and BROGAN, J., concur. *Page 1