[Cite as *State v. Broadnax*, 2011-Ohio-2182.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 24121 |
| v. | : | T.C. NO. 06 CR 1661 |
| TRACY S. BROADNAX, JR. | : | (Criminal appeal from Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

# **O P I N I O N**

Rendered on the ____6th____ day of ____May____, 2011.

. . . . . . . . . .

KIRSTEN A. BRANDT, Atty. Reg. No. 0070162, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

TRACY S. BROADNAX, JR., #535-458, Lebanon Correctional Institute, P. O. Box 56, Lebanon, Ohio 45036
        Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

{¶ 1}  Defendant-appellant Tracy Broadnax appeals from a trial court ordering denying his application for post-conviction DNA testing. For the following reasons, the judgment of the trial court will be Affirmed.

{¶ 2}  In April 2006, several aggravated robberies of gas stations and convenience stores occurred in northwest Montgomery County.  Witnesses provided clear and consistent descriptions of the perpetrator, his clothing, and the silver handgun that he brandished.  At the last two robberies, the perpetrator wore a black ski mask and a single glove.

{¶ 3}  Following the last robbery at which cash was taken, the robber fled in a black, older model Buick Regal driven by another man.  A short time later, police stopped a vehicle matching the description of the getaway car a mile away from the scene of the robbery.  The passenger, Broadnax, fled on foot but was quickly caught by the police.  Broadnax's brown clothing and black shoes with red and white markings matched the description given by the store clerk of the clothing worn by the robber.  Inside the car, officers found a glove, a brown shirt, a black ski mask, a silver handgun, and loose cash.

{¶ 4}  The store clerk was brought to the scene.  She could not identify the driver, but she immediately and positively identified Broadnax as the robber, explaining that she recognized his eyes, which are very distinctive.  She also recognized the black ski mask and other clothing found in the car.  As a result of the clerk's identification, Broadnax's photo was included in a photospread, which was shown to three previous victims.  All three identified Broadnax, two specifically pointing to his eyes.

{¶ 5}  Broadnax was indicted on five counts of aggravated robbery with gun specifications and five counts of having weapons while under disability.  He pled no contest to the aggravated robbery charges and three of the gun specifications.  The remaining charges and specifications were dismissed.  Broadnax was sentenced to thirteen years in prison.  We affirmed his conviction and sentence.  *State v. Broadnax,* Montgomery App.

No. 21844, 2007-Ohio-6584.

{¶ 6} On March 3, 2010, Broadnax filed an application for post-conviction DNA testing of the black ski mask, which the trial court overruled. Broadnax appeals.

I

{¶ 7} Broadnax's First Assignment of Error:

{¶ 8} "THE DEFENDANT- ('APPELLANT') WAS DENIED HIS RIGHT TO DUE PROCESS, BY THE STATE'S FAILURE TO DISCLOSE DNA ANALYSIS AND RESULTS."

{¶ 9} In his first assignment of error, Broadnax insists that the State failed to advise him of DNA testing that had been conducted on the black ski mask recovered from the getaway vehicle, and if he had been aware of the testing, he would not have entered a plea. However, the issue is not properly before us at this time. Broadnax's argument could have properly been raised in his direct appeal either as a discovery violation or as a claim of ineffective assistance of trial counsel, or it could have been raised in a motion to withdraw his plea. Broadnax did neither. Currently before us is only Broadnax's appeal from the trial court's denial of his motion for post-conviction DNA testing.

{¶ 10} Even if the issue were properly before us, we point out that the record shows that the State did disclose the test results to Broadnax's trial counsel. In Broadnax's October 27, 2009, motion for judicial release, he claimed that his attorney withheld the DNA test results from him until after his conviction and incarceration, and in fact, Broadnax attached the lab results to his motion. Broadnax's own motion rebuts his current claim; in that motion Broadnax implicitly conceded that the State did not fail to disclose the DNA test

results, but rather the State included those results with the rest of the discovery packet provided to counsel on Broadnax's behalf.

{¶ 11} Broadnax's first assignment of error is overruled.

II

{¶ 12} Broadnax's Second Assignment of Error:

{¶ 13} "DEFENDANT- ('APPELLANT') WAS DEPRIVED OF HIS FOURTEENTH AMENDMENT ABSOLUTE RIGHT TO HAVE ANALYZED EVIDENCE IN CONJUNCTION WITH CIRCUMSTANTIAL EVIDENCE."

{¶ 14} In his second assignment of error, Broadnax maintains that the trial court erred in denying his application for post-conviction DNA testing of the black ski mask recovered from the getaway car. We review the trial court's decision regarding the acceptance or denial of an inmate's application for post-conviction DNA testing for an abuse of discretion. *State v. Nalls,* Montgomery App. No. 21558, 2007-Ohio-1676. The abuse of discretion standard is defined as "[a]n appellate court's standard for reviewing a decision that is asserted to be grossly unsound, unreasonable, illegal, or unsupported by the evidence." *State v. Boles,* Montgomery App. No. 23037, 2010-Ohio-278, ¶18, quoting Black's Law Dictionary, Eighth Edition (2004), at 11.

{¶ 15} "Advances in DNA testing prompted the General Assembly to enact R.C. 2953.71 through R.C. 2953.83." *Nalls,* supra, at ¶20. Since their enactment, the statutes have undergone a series of changes.

{¶ 16} In his application for post-conviction DNA testing, Broadnax relied on R.C. 2953.71 to 2953.81, and specifically directed the trial court to R.C. 2953.73. However, by

their language, those sections apply to individuals who have been convicted following a trial, and not to those who have entered guilty or no contest pleas. In fact, R.C. 2953.72(C)(2) specifically states that an offender is not eligible to apply under sections 2953.71 to 2953.81 regarding any offense to which he pled guilty or no contest.

{¶ 17} Prior to its repeal effective July 6, 2010, via 2009 S.B. 77, R.C. 2953.82 did provide a vehicle by which an inmate who pled guilty or no contest could apply for post-conviction DNA testing. See, e.g., *State v. Cordell,* Greene App. No. 2010 CA 19, 2011-Ohio-1735. When Broadnax filed his application, R.C. 2953.82 was still in effect, and we therefore turn to that statute.

{¶ 18} R.C. 2953.82(A) stated: "An inmate who pleaded guilty or no contest to a felony offense may request DNA testing * * * if * * * [t]he inmate was sentenced to a prison term * * * and is in prison serving that prison term * * * [and] the inmate has at least one year remaining on the prison term * * *." As both requirements were met, Broadnax was an eligible inmate who may apply for DNA testing under R.C. 2953.82. See, e.g., *Cordell,* supra.

{¶ 19} Subsections (B) and (C) required the eligible inmate to file an application for testing and an acknowledgment as set forth in sections 2953.71 to 2953.81; the prosecutor had forty-five days in which to file a statement with the trial court indicating either agreement or disagreement with the application. If the prosecutor agreed, testing would proceed pursuant to sections 2953.77 to 2953.81, in the same manner as if the inmate had filed an application under section 2953.73 that the trial court had accepted.

{¶ 20} Until May 2007, R.C. 2953.82 also provided in subsection (D) that should the

prosecutor not agree with the inmate's request for DNA testing, that disagreement was final and not appealable. However, the Supreme Court held that subsection to be unconstitutional, as it violated the separation of powers doctrine, and severed it from the statute. *State v. Sterling*, 113 Ohio St.3d 255, 2007-Ohio-1790.

{¶ 21} R.C. 2953.82 did not contemplate judicial involvement in the DNA testing process. Prior to *Sterling,* the statute provided for either the prosecutor to agree with the inmate's application for DNA testing, in which case testing was ordered, or for the prosecutor not to agree with the application, and testing was not ordered. The statute provides no guidance to a trial court in exercising its discretion when considering an application for post-conviction DNA testing under that section.

{¶ 22} After severing R.C. 2953.82(D) in *Sterling,* the Ohio Supreme Court concluded that "[t]he remaining parts of R.C. 2953.82 permit an eligible inmate who has pleaded guilty or no contest to file an application for DNA testing and authorize the prosecuting attorney to agree or disagree with that request. R.C. 2953.82(B) provides that the application for DNA testing should be submitted to the court of common pleas and that the court may then exercise its judicial authority to determine the disposition of the request subject to appropriate appellate review." Id.at ¶42. Based on that statement, the trial court reasonably relied on the guidance offered by R.C. 2953.74 in considering Broadnax's application.

{¶ 23} At the time that Broadnax filed his application, R.C. 2953.74(B)(2) stated that a trial court could accept a post-conviction DNA application only if the test was being sought in regard to evidence that had previously been tested, but for which no definitive

results were received, and if an exclusive DNA test result "would have been outcome determinative at the trial stage * * *."

{¶ 24} Although R.C. 2953.74(C) includes additional requirements, those requirements could never be met by an inmate who did not demand a trial. Therefore, the trial court properly noted that in *State v. Buehler,* 113 Ohio St.3d 114, 2007-Ohio-1246, the Ohio Supreme Court held that a trial court may use its discretion to elevate the "outcome determinative" element to threshold status. Accordingly, the trial court focused its analysis on the question of whether an exclusive DNA test result on the ski mask would have been outcome determinative. While Broadnax insists that an exclusive test result would have been outcome determinative, the State argues that it would not in light of the eyewitness identification testimony of four victims.

{¶ 25} "Exclusive results are outcome determinative if, had they been presented at the inmate's trial, no reasonable factfinder would have found the inmate guilty of the offense." *State v. McCall,* Muskingum App. No. CT2005-0006, 2006-Ohio-225, ¶14, citing R.C. 2953.71(L).

{¶ 26} In *McCall*, the defendant was convicted of an attempted robbery after witnesses identified him. The defendant argued that should an exclusive result have been received from DNA testing of clothing identified as that worn by the robber and recovered from a dumpster near the scene, a jury may not have convicted him. The court stated that eyewitness testimony is sufficient to convict a defendant, regardless of whether DNA evidence would have provided an exclusion result. Id. at ¶17. Because the defendant in that case was convicted based primarily upon eyewitness testimony, the court concluded that

exclusive DNA test results would not have been outcome determinative. Id. at ¶¶16-18. The court made this finding even though it apparently applied the higher de novo standard. *State v. Hatton,* Pickaway App. No. 05CA38, 2006-Ohio-5121, ¶26, fn. 2.

{¶ 27} Similarly, had Broadnax gone to trial in this case, the State would have relied heavily on the eyewitness identification testimony of the four victims who identified Broadnax as the robber during either a show up or a photo spread, based upon his distinctive eyes. See, *Broadnax,* supra, at ¶¶19-21. Additionally, the evidence showed that Broadnax was found a short distance away from the scene a short time after the robbery, that he fled from the officers, that his distinctive clothing matched the victim's description, and that items described by the victim, including the handgun, were found in the vehicle (which had also been described by the victim) from which he fled. In other words, even if further DNA testing were done on the ski mask recovered from the getaway car, and it excluded Broadnax as a donor of the DNA on the mask, those results would not have been outcome determinative in this case because of the overwhelming evidence that Broadnax was the robber.

{¶ 28} The trial court did not abuse its discretion in denying Broadnax's application for post-conviction DNA testing. Broadnax's second assignment of error is overruled.

### III

{¶ 29} Broadnax's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . .

HALL, J. and BROGAN, J., concur.

(Hon. James A. Brogan, retired from the Second District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Kirsten A. Brandt
Tracy S. Broadnax, Jr.
Hon. Mary L. Wiseman