[Cite as *State v. Reed*, 2019-Ohio-3295.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28272 |
| | : | |
| v. | : | Trial Court Case No. 2001-CR-4126 |
| | : | |
| RASHAAN O. REED | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 16th day of August, 2019.

. . . . . . . . . .

MATHIAS H. HECK, JR., by MICHAEL P. ALLEN, Atty. Reg. No. 0095826, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

RASHAAN O. REED, #A415-481, P.O. Box 4501, Lima, Ohio 45802
        Defendant-Appellant, Pro Se

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Rashaan O. Reed, pro se, appeals from a judgment of the Montgomery County Court of Common Pleas, which denied his motion for leave to file a delayed motion for a new trial.   For the following reasons, the trial court's judgment will be affirmed.

## I. Procedural History

{¶ 2} In 2002, Reed was found guilty by a jury of murder with a firearm specification and of tampering with evidence in connection with the death of Joseph Smith.   The trial court sentenced him to 15 years to life for the murder and two years in prison for tampering with evidence, to be served consecutively to each other and to another sentence in a Miami County case (Miami C.P. No. 2000-CR-440).   In addition, the trial court sentenced Reed to three years of incarceration for the firearm specification, to be served consecutively to and prior to the definite sentence.   Reed's aggregate sentence in the Montgomery County case was 20 years to life in prison.

{¶ 3} Reed appealed from his convictions, raising three assignments of error.   His first assignment of error claimed that the trial court committed prejudicial error by (1) precluding him from offering testimony that he was not present when or where the victim was killed (alibi testimony), (2) sustaining objections to questions offered to attack and to impeach the credibility of the State's witnesses, and (3) denying him the opportunity to impeach the testimony of Stacy Young, a State's witness, with prior inconsistent statements.   His second and third assignments of error claimed that his convictions were against the manifest weight of the evidence and that the trial court improperly denied his Crim.R. 29 motion.   We rejected each of Reed's arguments and affirmed his convictions.   *State v. Reed*, 155 Ohio App.3d 435, 2003-Ohio-6536, 801 N.E.2d 862 (2d Dist.) (*Reed I*).

{¶ 4} In August 2008, Reed filed a pro se motion to vacate his convictions. The basis for his motion was that the indictment failed to include the mens rea for his offenses. The trial court denied the motion. Reed appealed, but the appeal was later dismissed due to his failure to timely file a brief. *State v. Reed*, 2d Dist. Montgomery No. 23802 (Sept. 8, 2010) (*Reed II*).

{¶ 5} In September 2010, Reed, pro se, moved for leave to file a motion for a new trial and filed a motion for a new trial, claiming that his sentence was void under *State v. Singleton*, 124 Ohio St.3d 173, 2009-Ohio-6434, 920 N.E.2d 958. The trial court denied his motions, but resentenced Reed to correct the imposition of post-release control and an error in the judgment entry. Reed did not appeal.

{¶ 6} In May 2014, Reed, pro se, filed a motion for leave to file a delayed motion for a new trial, claiming that another individual, Patron Steele, committed the murder and that several State's witnesses (Michael Shoemaker, Stacy Young, and Peter Holloway) lied when they testified that they did not receive any consideration or leniency from the State in exchange for their testimony. Reed withdrew the motion, with the court's consent, in July 2014.

{¶ 7} On October 7, 2014, Reed filed a pro se motion for leave to file a motion for a new trial, alleging misconduct by the prosecutor and two of the State's witnesses, Shoemaker and Holloway. Reed argued that Shoemaker and Holloway received leniency and the dismissal of charges in exchange for their testimony at Reed's trial, but that both witnesses testified — and the prosecutor argued to the trial court — that neither man received any promises from the State. Reed asserted that he was prejudiced by Shoemaker's and Holloway's "false and perjured" testimony, which the prosecutor failed

to correct. Reed further claimed that he was unavoidably prevented from filing a timely motion due to ineffective assistance of trial counsel and the prohibition on hybrid representation.

{¶ 8} On November 24, 2014, the trial court overruled the motion for leave to file a motion for new trial on several grounds. The trial court rejected Reed's contention that he was unavoidably prevented from filing a timely Crim.R. 33 motion, and it concluded that trial counsel did not file a motion for a new trial because there was "no good ground for it." The court stated, "The evidence did not establish that Shoemaker and Holloway had lied when they testified they received no consideration for their testimony in Reed's Montgomery County case. The evidence indicated that Holloway and Shoemaker may have received consideration for their testimony in the Miami County case, but they did not receive any for the Montgomery County case." The trial court concluded that Reed provided no evidence that Holloway and Shoemaker gave false testimony.

{¶ 9} The trial court further denied Reed's motion on res judicata grounds. The trial court reasoned that Reed could have raised on direct appeal or in a petition for post-conviction relief any issue he had related to the trial court's ruling at trial with respect to the prosecutor's agreements with Holloway and Shoemaker. And the trial court held that, as a successive motion, res judicata barred Reed's motion for a new trial.

{¶ 10} Finally, the trial court rejected Reed's argument that his trial counsel rendered ineffective assistance by failing to file a timely motion for a new trial. The court found no evidence that Reed's trial counsel had acted deficiently, and held that there was no indication that a new trial would have been granted had counsel filed such a motion.

{¶ 11} We affirmed the trial court's judgment. *State v. Reed,* 2d Dist. Montgomery

No. 26529, 2015-Ohio-3051 (*Reed III*). We concluded, in part, that Reed did not establish that his trial counsel was ineffective for failing to file a motion for a new trial. We noted that "[t]rial counsel was aware of the issue surrounding whether Holloway and Shoemaker had received any promises or benefits from the State in exchange for their testimony," and further that, "[h]aving made a record of the issue during trial, defense counsel reasonably could have determined that any issue surrounding Holloway's and Shoemaker's testimony was preserved for direct appeal." *Id.* at ¶ 23-24. We further concluded that, "in the absence of additional evidence that these witnesses provided false testimony or that the prosecutor suborned perjury, defense counsel could have reasonably concluded that there was little likelihood of success if raised in a motion for new trial." *Id.* at ¶ 24.

{¶ 12} We also agreed with the trial court that res judicata barred Reed's motion. We reasoned:

As stated above, the issue of Holloway and Shoemaker's plea agreements with the State was raised in the trial court, and the trial court's decision limiting cross-examination on that issue could have been raised on direct appeal. On appeal, Reed raised several evidentiary matters, including that the trial court erred in excluding alibi evidence, sustaining objections to questions offered to impeach the credibility of certain State's witnesses, and in denying Reed the opportunity to impeach the testimony of Stacy Young with prior inconsistent statements. Reed did not appeal the trial court's rulings regarding Holloway and Shoemaker.

In addition, Reed previously filed a motion for a new trial, pursuant

to Crim.R. 33. That motion was directed to the trial court's imposition of post-release control and errors in the judgment entry. Reed did not raise the alleged false testimony of Holloway or Shoemaker at that time, either. He cannot seek to raise those issues now.

*Id.* at ¶ 27-28.

{¶ 13} On November 28, 2018, Reed filed another motion for leave to file a delayed motion for a new trial. Reed claimed that he had newly discovered evidence consisting of plea agreements and other documents from the Miami County cases concerning the State's witnesses in this case; Reed provided an affidavit and 27 exhibits to support his motion. Reed asserted in his motion that he was unavoidably prevented from discovering his new evidence, because the State withheld the alleged exculpatory evidence and disavowed its existence.

{¶ 14} The State opposed the motion, claiming that the exhibits were not new evidence, that Reed had failed to establish that he was unavoidably prevented from raising his claims in a timely manner, and that his claims were barred by res judicata. The State asked that Reed's motion be denied without a hearing.

{¶ 15} On January 3, 2019, the trial court denied Reed's motion. The court reasoned:

A review of the evidentiary materials does not disclose that various witnesses for the state at Defendant's trial were subject to impeachment for receiving consideration in a Miami County, Ohio case for their testimony in this Montgomery County case. The record does not indicate that an agreement was entered into in Miami County that had anything to do with

the Montgomery County case.

The Petitioner has failed to show that there is either newly discovered evidence or that he was unavoidably delayed in filing a timely motion.

{¶ 16} Reed appeals the trial court's judgment, raising three assignments of error. Reed has also filed a motion requesting that we take judicial notice of various facts.

## II. Motion for Judicial Notice

{¶ 17} In his motion for judicial notice, Reed asks us to take notice of two sets of alleged facts: (1) that exhibits demonstrate that there was an alternative suspect in the murder of Smith, and (2) that the trial court has resolved another motion for a new trial by Reed, which was filed in the trial court subsequent to the court's ruling on the motion before us.

{¶ 18} Evid.R. 201 allows an adjudicative fact (i.e., a fact of the case) to be judicially noticed if the fact is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Evid.R. 201(A)-(B); *e.g., Harrah's Ohio Acquisition Co., LLC v. Cuyahoga Cty. Bd. of Revision*, 154 Ohio St.3d 340, 2018-Ohio-4370, 114 N.E.3d 192, ¶ 30; *Evans v. Jeff Wyler Chrysler Jeep Dodge Ram of Springfield*, 2018-Ohio-1726, 111 N.E.3d 901, ¶ 26 (2d Dist.). A court is required to take judicial notice if requested by a party and supplied with the necessary information. Evid.R. 201(D).

{¶ 19} With respect to his request regarding "unresolved exculpatory facts pointing to alternative suspects," Reed attaches two exhibits. The first is an excerpt of the testimony of Detective Steve Lord of the Miami County Sheriff's Office in *State v. Wayman*

*P. Braswell*, Miami C.P. No. 00 CR 440D. In that excerpt, Lord testified regarding Reed's "very extensive" drug operation and the fact that one of Reed's companions was shot and killed in Montgomery County. Lord indicated that Reed was under investigation for "that drug related homicide."

{¶ 20} The second exhibit was a narrative supplement report by Detective James R. Taylor of the Piqua Police Department. In the report, Taylor described a series of incidents involving Reed and Patron Steele, who apparently was trying to take over Reed's drug operation territory. The first incident involved the theft of drugs and money by Steele from Michael Shoemaker, an associate of Reed. In the second incident, Reed and Joseph Smith went to an apartment and robbed, at gunpoint, two individuals of cash, crack cocaine, and jewelry; the victims were the brother and girlfriend of Steele. Reed fired a shot during the robbery, but no one was injured. Taylor further wrote that he received information about the two incidents from Detective Ray Martin of the Dayton homicide squad, who had interviewed Reed. Martin had informed Taylor that Smith had been killed in Dayton on October 21, 2000, and that "Reed and Steele emerged as potential suspects in the Smith homicide." Finally, Taylor wrote that he, Detective Martin, and others went to the apartment where the second incident occurred and, with the consent of the resident, found a shell casing. Taylor wrote that the casing would be sent to the Miami Valley Regional Crime Lab for comparison with the shell casing recovered at the scene of Smith's homicide.

{¶ 21} Reed's evidence does not reflect an adjudicative fact of which we can take judicial notice. Whether Smith was killed due to his involvement in drug activities and whether Steele was an alternative suspect is not the kind of information that is "generally

known within the territorial jurisdiction of the trial court," nor is it the type of information that is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Reed's motion to take judicial notice of these "resolved exculpatory facts" is denied.

{¶ 22} Reed also asks us to take judicial notice of the fact that the trial court recently resolved his most recent motion for leave to file a delayed motion for a new trial, filed in the trial court on March 21, 2019. Reed states that the trial court overruled his motion on May 23, 2019, and he has appealed that ruling in Case No. 28442.

{¶ 23} We may take judicial notice of judicial opinions and public records accessible through the Internet. *State v. Bevers*, 2d Dist. Montgomery No. 27651, 2018-Ohio-4135, ¶ 13. Although Reed's filings in the trial court subsequent to his filing of his notice of appeal in this case are not part of the appellate record before us, they are readily accessible.

{¶ 24} Regardless, in reviewing the trial court's January 3, 2019 judgment, we are generally limited to the record before the trial court. *E.g., Kahler v. Eytcheson*, 2d Dist. Montgomery No. 23523, 2012-Ohio-208, ¶ 23. Moreover, the trial court's ruling on Reed's March 2019 motion has no bearing on whether the trial court properly denied Reed's November 28, 2018 motion, i.e., the motion on review in this case. Accordingly, we decline to take judicial notice of the trial court's May 23, 2019 decision. Reed's motion to take judicial notice is denied in its entirety.

{¶ 25} Finally, Reeds states that he wishes this appeal to be consolidated with his appeal from the May 23, 2019 decision. That request is also denied.

### III. Motion for Leave to File Motion for New Trial

{¶ 26} Reed's assignments of error state:

1. The trial court abused its discretion when it failed to hold a hearing on appellant's motion for leave to file a motion for a new trial, when the evidence, circumstances, and record supported his claims of prosecutorial misconduct.

2. The trial court abused its discretion when it failed to grant appellant's motion for leave to file a motion for new trial or hold a hearing when appellant established with prima facie evidence the state withheld exculpatory material in violation of his right to due process.

3. The trial court abused its discretion when it failed to grant appellant's motion for leave to file a motion for new trial or hold a hearing when appellant established by clear and convincing evidence that he was unavoidably prevented from discovering the evidence within 120 days of his conviction.

We will address Reed's assignments of error together.

{¶ 27} Motions for a new trial are governed by Crim.R. 33. A new trial may be granted if any of several grounds exist that materially affected the defendant's substantial rights. Crim.R. 33(A). Those grounds include "when new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial." Crim.R. 33(A)(6).

{¶ 28} Under Crim.R. 33(B), a motion for a new trial on account of newly discovered evidence must be filed within 120 days after the verdict. Crim.R. 33(B). If the 120-day time period has expired, as here, the defendant must first seek leave of the

trial court to file a delayed motion for a new trial. *State v. Harwell*, 2d Dist. Montgomery No. 28104, 2019-Ohio-643, ¶ 16.

{¶ 29} "To obtain leave, defendant must demonstrate by clear and convincing evidence that he or she was unavoidably prevented from timely filing the motion for a new trial or discovering the new evidence within the time period provided by Crim.R. 33(B)." (Citations omitted.) *Id.*, quoting *State v. Warwick*, 2d Dist. Champaign No. 01CA33, 2002 WL 1585663, *2 (July 19, 2002). "The reference to 'clear and convincing proof' means something more than bare allegations or statements in a motion." *State v. Morris*, 2d Dist. Montgomery No. 26949, 2017-Ohio-1196, ¶ 19. "A defendant is entitled to a hearing on a motion for leave to seek a new trial if he [or she] submits documents that on their face support his [or her] claim of being unavoidably prevented from meeting Crim.R. 33's time requirement." *State v. Hiler*, 2d Dist. Montgomery No. 27364, 2017-Ohio-7636, ¶ 12, citing *State v. Lanier*, 2d Dist. Clark No. 2009 CA 84, 2010-Ohio-2921, ¶ 16.

{¶ 30} " '[A] party is unavoidably prevented from filing a motion for new trial if the party had no knowledge of the existence of the ground supporting the motion for new trial and could not have learned of the existence of that ground within the time prescribed for filing the motion for new trial in the exercise of reasonable diligence.' " *State v. Parker*, 178 Ohio App.3d 574, 2008-Ohio-5178, 899 N.E.2d 183, ¶ 16 (2d Dist.), quoting *State v. Walden*, 19 Ohio App.3d 141, 145-146, 483 N.E.2d 859 (10th Dist.1984). "[A] defendant fails to demonstrate that he or she was unavoidably prevented from discovering new evidence when he would have discovered that information earlier had he or she exercised due diligence and some effort." *State v. Lenoir*, 2d Dist. Montgomery No. 26846, 2016-Ohio-4981, ¶ 24, citing *State v. Metcalf*, 2d Dist. Montgomery No. 26101, 2015-Ohio-

3507, ¶ 11, citing *Warwick*.

{¶ 31} We review the trial court's denial of leave to file a motion for a new trial for an abuse of discretion. *State v. Devaughns*, 2d Dist. Montgomery No. 25826, 2015-Ohio-452, ¶ 15. An abuse of discretion occurs when the decision of a court is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 32} It is undisputed that Reed was required to obtain leave to file a delayed motion for a new trial. Reed was convicted in December 2002. He did not file this motion for leave to file a delayed motion for new trial until November 2018, nearly 16 years later, which was well beyond the time limitations in Crim.R. 33(B). Thus, Reed was required to establish by clear and convincing evidence that he was unavoidably prevented from timely filing the motion for a new trial or discovering the new evidence within the time period provided by Crim.R. 33(B).

{¶ 33} In addition to his affidavit, Reed attached 27 exhibits to his motion:

- Exhibit A: correspondence to Reed from his attorney, dated September 11, 2018, indicating that she was providing documents to him

- Exhibit B: Payment receipts from the Miami County Court of Common Pleas

- Exhibits C-G: Plea agreements in Miami C.P. No. 2000 CR 440B, C, E, F, and G for Michael Shoemaker (Mar. 26, 2001), Patron Moses Steele (Mar. 21, 2001), Stacy Young (July 6, 2001), Maria Carson (May 17, 2001), and Malissa Thurmond (Mar. 27, 2001)

- Exhibits H-K: Judgment entries in Miami C.P. No. 2000 CR 440: *State v. Shoemaker (440G), State v. Thurmond (440F), State v. Young (440E),* and *State*

*v. Carson (440C)*[1]

- Exhibit L: Appointed counsel's itemized fee statement in *State v. Steele*

- Exhibit M: An order for substitution of counsel in *State v. Steele*, Miami C.P. No. 2000 CR 440B, filed July 12, 2001

- Exhibit N: A motion for continuance, for leave to withdraw as counsel, and for court-appointed counsel, filed on Feb. 26, 2001 in *State v. Steele*, Miami C.P. No. 2000 CR 440B

- Exhibit O: An order granting a motion to withdraw as counsel, filed on Feb. 15, 2001 in *State v. Carson*, Miami C.P. No. 2000 CR 440C

- Exhibit P: An order granting a motion to withdraw as counsel, filed on Feb. 26, 2001 in *State v. Steele*, Miami C.P. No. 2000 CR 440B

- Exhibit Q: An order, filed on March 29, 2001, dismissing a gun specification, accepting defendant's plea and ordering a presentence investigation in *State v. Steele*, Miami C.P. No. 2000 CR 440B

- Exhibit R: Handwritten correspondence, dated Aug. 5, 2002, from Michael Shoemaker [addressee unclear], asking for a motion for judicial release to be filed on his behalf

- Exhibit S: Motion for judicial release filed on Aug. 26, 2002 in *State v. Shoemaker*, Miami C.P. No. 2000 CR 440G

- Exhibit T: Journal entry ordering a judicial release hearing, filed on Aug. 28, 2002

[1] There were seven co-defendants in all. In addition to Shoemaker, Thurmond, Young, and Carson, Reed was charged in Case No. 2000 CR 440A, Patron Steele was charged in Case No. 2000 CR 440B, and Wayman Braswell was charged in Case No. 2000 CR 440D.

in *State v. Shoemaker*, Miami C.P. No. 2000 CR 440G

- Exhibit U: Order filed on Sept. 19, 2002 granting judicial release and placing Shoemaker on community control in *State v. Shoemaker*, Miami C.P. No. 2000 CR 440G

- Exhibit V: Excerpt of the trial transcript (May 23-24, 2001) in *State v. Wayman Braswell*, Miami C.P. No. 2000 CR 440D; portions of the testimony of Michael Shoemaker and Detective Steve Lord.

- Exhibit W: "Dayton Police Supplement to Joint Investigation with Piqua P.D. Involving Rahsaan Reed" by Detective Raymond R. Mark, dated Nov. 27, 2000

- Exhibit W-1: Narrative Supplement by Detective James R. Taylor, dated Nov. 15, 2000

- Exhibit X: Witness plea and confidential information substantial assistance agreements for Steele and Shoemaker, and fax cover page showing that the documents were sent to the Montgomery County prosecutor

- Exhibit Y: Apparent pre-trial handwritten correspondence regarding Miami County case; the author and addressee are unclear from the document, but Reed states that the author was Steele

- Exhibit Z: A handwritten witness statement by Stacy Young to the Miami County Sheriff's Department, implicating Reed in a Dayton homicide

**{¶ 34}** Reed contends that the attached documents contain exculpatory evidence in that they demonstrate, generally, (1) the existence of Detectives Taylor and Lord as "exculpatory witnesses", (2) evidence that Steele carried a particular type of gun and was a suspect in Smith's homicide, (3) the circumstances of the prior robberies in Miami

County, and (4) evidence that various individuals, some of whom testified against Reed, entered plea agreements with the State and received benefits for their cooperation. Reed claims that he was prevented from discovering the documents due to misconduct by the State, specifically statements by the prosecutor at his trial denying the existence of plea agreements and an alternative suspect. Reed also claims that the State knowingly offered false testimony from witnesses.

{¶ 35} We have reviewed all of the exhibits attached to Reed's present motion. In addition, we have reviewed portions of the transcript of Reed's trial, including the motions by Reed's trial counsel prior to jury selection concerning (1) the need for the State to provide an adequate foundation for its witnesses' testimony regarding statements by Reed, (2) the disclosure of exculpatory evidence by the State, and (3) limiting certain evidence at trial. As to exculpatory evidence, defense counsel reiterated to the trial court "that there was a Miami County matter that my client was involved in and that there was a joint investigation with Montgomery County in that matter and the murder." (Trial Tr. at 10.) Counsel stated that he was filing a motion for exculpatory evidence "because I want to make certain that any source of exculpatory evidence is also included as well." (*Id.*)

{¶ 36} In response to defense counsel's motion, the prosecutor disputed that there was a "joint investigation" into the murder, stating that Montgomery County detectives had gone to Miami County to interview witnesses. The prosecutor indicated that he became aware of Miami County discovery from defense counsel. The prosecutor told the court that defense counsel "has everything, has the homicide, and he has everything from the Miami County drug case." (Trial Tr. at 12-13.)

{¶ 37} Our review of the trial transcript also included the testimony of Michael Shoemaker and Stacy Young, both of whom were co-defendants in Reed's Miami County case, and the sidebar discussions during their testimony during which defense counsel raised the issue of plea agreements. As Reed recognizes in his motion, his defense counsel was aware of the agreement between Shoemaker and the State, entered into by the prosecutor in Miami County, at the time of Reed's trial.

{¶ 38} Upon review of the alleged newly discovered exhibits and the trial transcript, we find no support for Reed's assertion that the State withheld exculpatory evidence or that Reed was otherwise unavoidably prevented from discovering the evidence upon which he relies. Reed was aware of the Miami County case against him and his six co-defendants, and the record in this case indicates that Reed's defense counsel made the prosecution in this case aware of potential discovery from the Miami County case against Reed. Moreover, the plea agreements and the documents from the cases against Reed's Miami County co-defendants were dated in 2001 or 2002, prior to Reed's murder trial in Montgomery County. (Reed's murder trial was held in November 2002.) Some of the exhibits, such as Exhibits X and Z, were attached to Reed's May 2014 motion for leave to file a delayed motion for a new trial. Although Reed claims that the documents from his co-defendants' cases are newly discovered (*see* Exhibit A), we find nothing to indicate that he was unavoidably prevented from discovering the documents in a timely fashion.

{¶ 39} In addition, upon review of Reed's affidavit and supporting exhibits, we find no basis to conclude that the alleged newly discovered evidence warranted a new trial. None of the exhibits demonstrate that Shoemaker or Young (the two Miami County co-

defendants who testified at the murder trial) received a benefit in exchange for their cooperation in Reed's Montgomery County case (as opposed to the Miami County cases). Many of Reed's attached exhibits have no bearing on Reed's guilt or innocence, nor do they have any apparent relevance to the impeachment of any witness or potential witness. And while some documents reflect that Dayton police officers collaborated to some extent with Miami County officers and that Patron Steele was believed, at some point, to be a possible suspect in the murder, the documents do not support a conclusion that officers or prosecutors withheld exculpatory information from Reed or that Steele might be culpable for the murder.

{¶ 40} Accordingly, we find no abuse of discretion in the trial court's denial of Reed's motion for leave to file a delayed motion for a new trial without a hearing. Reed's assignments of error are overruled.

### IV. Conclusion

{¶ 41} The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

HALL, J. and TUCKER, J., concur.

Copies sent to:

Mathias H. Heck
Michael P. Allen
Rashaan O. Reed
Hon. Timothy N. O'Connell