[Cite as *State v. Reed*, 2020-Ohio-3574.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28442 |
| | : | |
| v. | : | Trial Court Case No. 2001-CR-4126 |
| | : | |
| RASHAAN O. REED | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 2nd day of July, 2020.

. . . . . . . . . . .

MATHIAS H. HECK JR. by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

RASHAAN O. REED, #A415-481, P.O. Box 4501, Lima, Ohio 45802
      Defendant-Appellant, Pro Se

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Rashaan O. Reed appeals pro se from the trial court's decision and entry overruling a successive motion for leave to file a delayed motion for a new trial.

{¶ 2} Reed advances two assignments of error. First, he contends the trial court erred in addressing the merits of his proposed new-trial motion while overruling his motion for leave to file the motion. Second, he claims the trial court abused its discretion in overruling his motion for leave to file a delayed new-trial motion.

{¶ 3} The record reflects that Reed was convicted of murder and evidence tampering in 2002 in connection with the shooting death of Joseph Smith. He received an aggregate sentence of 20 years to life in prison. This court affirmed on direct appeal, overruling assignments of error challenging the exclusion of alibi testimony, the preclusion of questioning to impeach the State's witnesses, and the legal sufficiency and manifest weight of the State's evidence. *State v. Reed*, 155 Ohio App.3d 435, 2003-Ohio-6536, 801 N.E.2d 862 (2d Dist.) (*Reed I*).

{¶ 4} In August 2008, Reed moved to vacate his convictions on the basis that his indictment failed to include a mens rea. The trial court denied the motion. This court dismissed an appeal for failure to timely file a brief. *State v. Reed*, 2d Dist. Montgomery No. 23802 (Sept. 8, 2010) (*Reed II*).

{¶ 5} In September 2010, Reed sought a new trial on the basis that his sentence was void under *State v. Singleton,* 124 Ohio St.3d 173, 2009-Ohio-6434, 920 N.E.2d 958. While not granting Reed a new trial, the trial court resentenced him to correct the imposition of post-release control and an error in the judgment entry.

{¶ 6} In May 2014, Reed moved for leave to file a delayed new-trial motion,

claiming that another individual, Patron Steele, had committed the murder and that several prosecution witnesses (Michael Shoemaker, Stacy Young, and Peter Holloway) had lied when they denied receiving any consideration or leniency from the State in exchange for their testimony. Reed subsequently withdrew the motion.

{¶ 7} In October 2014, Reed filed another motion for leave to file a new-trial motion. He alleged misconduct by the prosecutor and two prosecution witnesses, Shoemaker and Holloway. Reed claimed the two witnesses falsely had testified that they did not receive leniency or concessions in exchange for their testimony. Reed further claimed he had been prejudiced by this "false and perjured" testimony and that he had been unavoidably prevented from filing a timely motion due to ineffective assistance of counsel and the prohibition on hybrid representation. In November 2014, the trial court overruled the motion for leave. It rejected Reed's "unavoidably prevented" argument, reasoning that his counsel did not seek a new trial because there was "no good ground for it." The trial court found no evidence that Holloway and Shoemaker had given false testimony. The trial court also applied res judicata. It reasoned that Reed could have raised on direct appeal or in a post-conviction relief petition any issue he had concerning the trial court's ruling with respect to the prosecutor's agreements with Holloway and Shoemaker. The trial court thus held that res judicata barred Reed's successive motion for a new trial. The trial court also found no ineffective assistance of counsel for failing to file a timely new-trial motion. This court affirmed that ruling on direct appeal. *State v. Reed*, 2d Dist. Montgomery No. 26529, 2015-Ohio-3051 (*Reed III*).

{¶ 8} In November 2018, Reed filed yet another motion for leave to file a delayed new-trial motion. He claimed to possess newly discovered evidence consisting of plea

agreements and other assorted documents from the Miami County cases concerning the State's witnesses in this case. Reed provided an affidavit and 27 exhibits to support his motion. He professed to have been unavoidably prevented from discovering this new evidence because the State withheld it and disavowed its existence. The trial court overruled Reed's motion in January 2019, reasoning:

> A review of the evidentiary materials does not disclose that various witnesses for the state at Defendant's trial were subject to impeachment for receiving consideration in a Miami County, Ohio case for their testimony in this Montgomery County case. The record does not indicate that an agreement was entered into in Miami County that had anything to do with the Montgomery County case.

> The Petitioner has failed to show that there is either newly discovered evidence or that he was unavoidably delayed in filing a timely motion.

{¶ 9} On appeal, we affirmed the trial court's denial of Reed's November 2018 motion for leave to file a new-trial motion. *State v. Reed*, 2d Dist. Montgomery No. 28272, 2019-Ohio-3295 (*Reed IV*). We first noted that Reed had filed his motion roughly 16 years after his conviction, "which was well beyond the time limitations in Crim.R. 33(B)." *Reed IV* at ¶ 32. As a result, we recognized that he "was required to establish by clear and convincing evidence that he was unavoidably prevented from timely filing the motion for a new trial or discovering the new evidence within the time period provided by Crim.R. 33(B)." *Id.* We then reviewed the 27 exhibits accompanying Reed's affidavit and motion. They included the following:

• Exhibit A: correspondence to Reed from his attorney, dated September

11, 2018, indicating that she was providing documents to him.

• Exhibit B: Payment receipts from the Miami County Court of Common Pleas.

• Exhibits C-G: Plea agreements in Miami C.P. No. 2000 CR 440B, C, E, F, and G for Michael Shoemaker (Mar. 26, 2001), Patron Moses Steele (Mar. 21, 2001), Stacy Young (July 6, 2001), Maria Carson (May 17, 2001), and Malissa Thurmond (Mar. 27, 2001).

• Exhibits H-K: Judgment entries in Miami C.P. No. 2000 CR 440: *State v. Shoemaker* (440G), *State v. Thurmond* (440F), *State v. Young* (440E), and *State v. Carson* (440C) [footnote omitted].

• Exhibit L: Appointed counsel's itemized fee statement in *State v. Steele.*

• Exhibit M: An order for substitution of counsel in *State v. Steele*, Miami C.P. No. 2000 CR 440B, filed July 12, 2001.

• Exhibit N: A motion for continuance, for leave to withdraw as counsel, and for court-appointed counsel, filed on Feb. 26, 2001 in *State v. Steele*, Miami C.P. No. 2000 CR 440B.

• Exhibit O: An order granting a motion to withdraw as counsel, filed on Feb. 15, 2001 in *State v. Carson*, Miami C.P. No. 2000 CR 440C.

• Exhibit P: An order granting a motion to withdraw as counsel, filed on Feb. 26, 2001 in *State v. Steele*, Miami C.P. No. 2000 CR 440B.

• Exhibit Q: An order, filed on March 29, 2001, dismissing a gun specification, accepting defendant's plea and ordering a presentence investigation in *State v. Steele*, Miami C.P. No. 2000 CR 440B.

• Exhibit R: Handwritten correspondence, dated Aug. 5, 2002, from Michael Shoemaker [addressee unclear], asking for a motion for judicial release to be filed on his behalf.

• Exhibit S: Motion for judicial release filed on Aug. 26, 2002 in *State v. Shoemaker*, Miami C.P. No. 2000 CR 440G.

• Exhibit T: Journal entry ordering a judicial release hearing, filed on Aug. 28, 2002 in *State v. Shoemaker*, Miami C.P. No. 2000 CR 440G.

• Exhibit U: Order filed on Sept. 19, 2002 granting judicial release and placing Shoemaker on community control in *State v. Shoemaker*, Miami C.P. No. 2000 CR 440G.

• Exhibit V: Excerpt of the trial transcript (May 23-24, 2001) in *State v. Wayman Braswell*, Miami C.P. No. 2000 CR 440D; portions of the testimony of Michael Shoemaker and Detective Steve Lord.

• Exhibit W: "Dayton Police Supplement to Joint Investigation with Piqua P.D. Involving Rahsaan Reed" by Detective Raymond R. Mark, dated Nov. 27, 2000.

• Exhibit W-1: Narrative Supplement by Detective James R. Taylor, dated Nov. 15, 2000.

• Exhibit X: Witness plea and confidential information substantial assistance agreements for Steele and Shoemaker, and fax cover page showing that the documents were sent to the Montgomery County prosecutor.

• Exhibit Y: Apparent pre-trial handwritten correspondence regarding Miami County case; the author and addressee are unclear from the document, but

Reed states that the author was Steele.

• Exhibit Z: A handwritten witness statement by Stacy Young to the Miami County Sheriff's Department, implicating Reed in a Dayton homicide.

{¶ 10} Reed claimed the foregoing exhibits demonstrated, among other things, that Steele was a suspect in Smith's homicide and that various individuals, some of whom testified against Reed, had entered plea agreements with the State and had received benefits for their cooperation. Reed asserted that he had been unavoidably prevented from discovering the documents because the State had denied the existence of plea agreements or an alternative suspect. Reed also claimed that the State knowingly had offered false testimony from witnesses.

{¶ 11} After reviewing Reed's exhibits and other portions of the record, we reasoned:

> Upon review of the alleged newly discovered exhibits and the trial transcript, we find no support for Reed's assertion that the State withheld exculpatory evidence or that Reed was otherwise unavoidably prevented from discovering the evidence upon which he relies. Reed was aware of the Miami County case against him and his six co-defendants, and the record in this case indicates that Reed's defense counsel made the prosecution in this case aware of potential discovery from the Miami County case against Reed. Moreover, the plea agreements and the documents from the cases against Reed's Miami County co-defendants were dated in 2001 or 2002, prior to Reed's murder trial in Montgomery County. (Reed's murder trial was held in November 2002.) Some of the exhibits, such as Exhibits X and Z,

were attached to Reed's May 2014 motion for leave to file a delayed motion for a new trial. Although Reed claims that the documents from his co-defendants' cases are newly discovered (see Exhibit A), we find nothing to indicate that he was unavoidably prevented from discovering the documents in a timely fashion.

In addition, upon review of Reed's affidavit and supporting exhibits, we find no basis to conclude that the alleged newly discovered evidence warranted a new trial. None of the exhibits demonstrate that Shoemaker or Young (the two Miami County co-defendants who testified at the murder trial) received a benefit in exchange for their cooperation in Reed's Montgomery County case (as opposed to the Miami County cases). Many of Reed's attached exhibits have no bearing on Reed's guilt or innocence, nor do they have any apparent relevance to the impeachment of any witness or potential witness. And while some documents reflect that Dayton police officers collaborated to some extent with Miami County officers and that Patron Steele was believed, at some point, to be a possible suspect in the murder, the documents do not support a conclusion that officers or prosecutors withheld exculpatory information from Reed or that Steele might be culpable for the murder.

*Reed IV* at ¶ 38-39.

{¶ 12} Reed filed his present motion for leave to file a delayed new-trial motion on March 21, 2019, just four months after filing his prior motion. In this most recent iteration of his efforts to obtain a new trial, Reed provided the trial court with 17 exhibits (Exhibits

A through Q) with numerous subparts, as well as lengthy excerpts from his own 2002 trial transcripts. In all, Reed's most recent filing contains hundreds of pages of material. We note, however, that at least two of the "Affidavits of Court Record" and accompanying payment receipts from the Miami County Clerk of Courts reflect that the materials they involve were obtained in July 2018, which was four months *before* Reed filed the motion for leave to seek a new trial that we addressed and rejected in *Reed IV*. We note too that the vast majority of the exhibits involve court records, discovery, or other sundry materials pertaining to the Miami County case involving Reed and six co-defendants.

{¶ 13} The trial court overruled Reed's most recent motion on May 23, 2019, reasoning in part:

> Defendant asserts this motion under Crim.R. 33(B). This motion is filed approximately 16 years and 5 months after the rendering of verdicts in this case. Defendant has filed previous motions for leave to file a delayed motion for new trial.

> Defendant has attached a substantial appendix to his motion. The appendix contains numerous exhibits which Defendant asserts is the newly discovered evidence to support his motion for new trial.

> * * *

> In late 2017 or early 2018, Defendant employed attorney Gayle Miller to obtain the records that are now attached to the motion. Attorney Gayle Miller was able to acquire all the exhibits that constitute the appendix for this motion. Defendant has not offered any explanation for why he did not employ attorney Miller, or another attorney, many years ago to acquire

these same records. Defendant does not indicate why an attorney or other person was not enlisted a decade or more ago to obtain the materials that Defendant now possesses to support his motion for leave to file for new trial. The motion has to be filed within a reasonable time under the circumstances. The court finds that Defendant failed to establish by clear and convincing evidence that he was unavoidably prevented from filing a timely motion for new trial, or that he adequately explained the reason for the delay. There is insufficient evidence to establish this motion was filed within a reasonable time under the circumstances.

Crim.R. 33(A)(2) permits a defendant to file a motion for new trial based on conduct of the jury, the prosecuting attorney, or witnesses for the state. Defendant has previously argued that several witnesses for the state were untruthful about whether they had received any promises or benefits in exchange for their testimony against him. This matter has been raised repeatedly by Defendant. The court has reviewed the memorandum of Defendant here and the supporting materials in the appendix. The supporting materials, recently obtained, do not show misconduct on behalf of the witnesses. They do not show misconduct by the prosecutor.

Defendant is asserting the witnesses lied when they said they received no benefits in exchange for the testimony against him. The evidence indicates the witnesses may have received some benefits in their cases, filed against them in Miami County, related to testimony they provided in this case. They did not receive benefits from their cooperation

in the Dayton/Montgomery County case. The Defendant was charged in the Miami County RICO case, also.

* * *

The court has reviewed the exhibits and parts of the trial transcript. Having done so, the court finds that the evidence that Defendant has now acquired does not support any assertion that the witnesses were untruthful about benefits from testifying such that they are impeached.

Defendant was heavily involved in an illegal drug trafficking operation. The operation involved a great deal of activity in Miami County as well as other places in the greater-Dayton area. These witnesses were traffickers as well. So it is natural that there might be some blending of the individuals' behavior with respect to Reed, his drug trafficking, and other criminal activity, including violent activity.

The direct evidence from the exhibits of recent recovery and the inference therefrom do not create cause to believe that the witnesses lied when they testified that they did not receive special consideration for their testimony against Reed in this case. It appears that they received consideration in their own defense cases in the Miami County matter for information about Reed's drug trafficking. In some instances, they were frank about that.

Defendant's Motion for Leave to file a Motion for New Trial is not well-taken and is hereby OVERRULED.

(May 23, 2019 Decision and Entry at 1-3)

{¶ 14} Under Crim.R. 33(B), "[m]otions for new trial on account of newly discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered[.]" The rule further provides, however, that "[i]f it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period." *Id.* "Where a defendant has established that he was unavoidably prevented from filing a timely motion for a new trial, the court must still determine if the motion was filed within a reasonable time, under the circumstances." *Reed III* at ¶ 25. "We review the trial court's denial of leave to file a motion for a new trial for an abuse of discretion." *Id.* at ¶ 16, citing *State v. Devaughns*, 2d Dist. Montgomery No. 25826, 2015-Ohio-452, ¶ 15.

{¶ 15} With the foregoing standards in mind, we see no abuse of discretion in the trial court's denial of Reed's most recent motion for leave to file a new-trial motion. Over the years, he repeatedly has alleged that discovery pertaining to a Miami County case was denied to him when he requested it in connection with his Montgomery County murder case. He repeatedly has argued, among other things, that newly discovered evidence would establish Patron Steele as an alternative suspect in the murder investigation. He also repeatedly has argued that co-defendants in the Miami County case received favorable treatment for assisting the prosecution in the Montgomery County case. In addition to relying on documents previously filed, Reed's current motion appears to contain some additional materials intended to advance these theories. (*See* Defendant's March 21, 2019 Motion for Leave to File a Delayed Motion for New Trial and

accompanying materials.)

{¶ 16} Not only are the arguments Reed now makes the same that he has previously made, detailed review of each and every document Reed attached to his March 21, 2019 motion fails to demonstrate any substantive document that is new, and there is no demonstration that he was unavoidably prevented from discovering any of them. For example, he has submitted transcribed police interview statements from the Miami County drug investigation of co-defendants Patron Steele and Maria Carson, and transcribed statements of potential witnesses Kelly Meyer and Janice and Gary McGee. All those statements show they were transcribed in 2001, *before* Reed's murder trial. And his submitted documents reveal those statements were transcribed as part of Reed's own Miami County RICO case discovery when his Miami County attorney filed a February 21, 2001 motion to transcribe "a series of taped statements involving witnesses and/or co-defendants." (Reed Exhibit N6-7.) The Miami County Common Pleas Court ordered the statements to be transcribed on February 26, 2001. In apparent response, Patron Steele's statement, designated as "CS-17" (D4-D34) was transcribed March 14, 2001. Kelly Meyer's statement was transcribed March 8, 2001. Janice and Gary McKee's statement was transcribed March 16, 2001. Maria Carson's statement was transcribed May 21, 2001. When Reed filed his March 21, 2019 motion 18 years later, there was nothing new about those statements and nothing showing he had been prevented from obtaining them.

{¶ 17} Reed submitted the Miami County plea forms for himself and co-defendants Shoemaker, Steele, Young, Carson and Thurmond. Every one of those forms was a public record filed in Miami County Common Pleas Court in 2001, and each co-defendant that pled did so well before the filing of Reed's own plea form filed August 1, 2001.

Eighteen years later, there's nothing new about those plea forms and no indication Reed was prevented from obtaining them.

{¶ 18} Another example is that Reed submitted several Miami County investigative police reports, all of which are dated before his 2002 Montgomery County trial and many of which are stamped "Discovery Provided," most likely from Reed's Miami County case with the co-defendants. Moreover, Reed's murder trial counsel had been provided most if not all of those reports. At page 11 of the trial transcript, Reed's trial counsel acknowledged "I did get a big packet, *about 3 or 4 inches of material,* mostly statements and things from various witnesses up there that they had been – that Miami County had included." (Tr. 11.) And, Reed's murder trial counsel cross-examined witnesses by reference to Miami County police reports. For example, Miami County Detective Eshelman was called as a witness by Reed. It is apparent from the questioning that Reed's attorney had Eshelman's investigative reports because of the detail in the questioning (Tr. 815-819) and because of the dialog at sidebars such as where Reed's counsel remarked "I know it's in the [Detective's investigative] report that you heard me refer to." (Tr. 827.) More than 16 years after the trial, Reed has not demonstrated any of his police report documents are new, and there is no indication Reed was prevented from obtaining them.

{¶ 19}  In support of his contention that witnesses at his murder trial testified falsely when they said they had no agreement to testify against him, he submitted the Confidential Informant and Substantial Assistance agreements for Patron Steele and Michael Shoemaker. (Exhibits L1-L7.) Nothing in those March 2001 Miami County agreements required those defendants to testify against Reed in the Montgomery County

murder trial in late October and early November 2002. Steele did not testify at the murder trial and his plea agreement is irrelevant. And, when Michael Shoemaker testified, Reed's counsel stated "I have in my hands a plea agreement between the State of Ohio and Michael Shoemaker." (Tr. 515.) Nothing is new about that plea agreement, Reed's counsel had it during the 2002 trial.

{¶ 20} We recognize that some documents were obtained for Reed from the Miami County Clerk of Courts on January 9, 2019, and a CD containing 467 pages of material was obtained from the Miami County Prosecutor's office on January 16, 2019. But there is no explanation which of the numerous exhibits attached to the motion were obtained from where, or when. More importantly, there is no explanation whatsoever why these documents were not obtained years and years ago.

{¶ 21} We have carefully reviewed Reed's most recent motion, and all of the attachments.[1] We continue to believe, as we recently found in *Reed IV*, that he has failed to demonstrate grounds for filing a delayed new-trial motion. As we did in *Reed IV*, we see no abuse of discretion in the trial court's holding that Reed failed to present clear and convincing evidence establishing that he was unavoidably prevented from discovering any new evidence. " '[A] party is unavoidably prevented from filing a motion for new trial if the party had no knowledge of the existence of the ground supporting the motion for new trial and could not have learned of the existence of that ground within the time prescribed for filing the motion for new trial in the exercise of reasonable diligence.' " *State v. Parker*, 178 Ohio App.3d 574, 2008-Ohio-5178, 899 N.E.2d 183, ¶ 16 (2d Dist.), quoting *State v. Walden*, 19 Ohio App.3d 141, 145-146, 483 N.E.2d 859 (10th Dist.1984). "[A]

---

[1] The copy quality of a few handwritten documents make them not entirely legible.

defendant fails to demonstrate that he or she was unavoidably prevented from discovering new evidence when he would have discovered that information earlier had he or she exercised due diligence and some effort." *State v. Lenoir*, 2d Dist. Montgomery No. 26846, 2016-Ohio-4981, ¶ 24, citing *State v. Metcalf*, 2d Dist. Montgomery No. 26101, 2015-Ohio-3507, ¶ 11.

{¶ 22} Here Reed has had knowledge of the grounds supporting his motion since the time of his trial, and he has filed successive motions for leave to seek a new trial raising the same or similar arguments. Reed cites his incarceration and resulting limited resources as reasons for his delay. But the mere fact of incarceration does not constitute clear and convincing evidence that a defendant was unavoidably prevented from discovering evidence. *State v. Parker*, 178 Ohio App.3d 574, 2008-Ohio-5178, 899 N.E.2d 183, ¶ 21 (2d Dist.). That is particularly true in the present case. As the State notes, Reed has filed multiple prior motions for leave to seek a new trial, attaching scores of documents that he claimed were concealed or withheld. It is evident, then, that Reed has been able to obtain records and other documents in the past. As for any potential new evidence supporting Reed's current motion, the trial court acted within its discretion in concluding that he could have located it earlier. As we did in *Reed IV*, we also continue to "find no basis to conclude that the alleged newly discovered evidence warranted a new trial." *Reed IV* at ¶ 39. In addressing this issue in *Reed IV*, we reasoned:

> * * * None of the exhibits demonstrate that Shoemaker or Young (the two Miami County co-defendants who testified at the murder trial) received a benefit in exchange for their cooperation in Reed's Montgomery County case (as opposed to the Miami County cases). Many of Reed's attached

exhibits have no bearing on Reed's guilt or innocence, nor do they have any apparent relevance to the impeachment of any witness or potential witness. And while some documents reflect that Dayton police officers collaborated to some extent with Miami County officers and that Patron Steele was believed, at some point, to be a possible suspect in the murder, the documents do not support a conclusion that officers or prosecutors withheld exculpatory information from Reed or that Steele might be culpable for the murder.

*Id.*

{¶ 23} Nothing in the materials accompanying Reed's most recent motion alters or undermines our confidence in the foregoing conclusions.

{¶ 24} Finally, as for Reed's complaint about the trial court blending a discussion of the merits of the new-trial issue with its analysis of his request for leave to seek a new trial, we fail to see any prejudice to him. This is particularly true in light of our determination herein that Reed failed to establish grounds for filing a delayed new-trial motion.

{¶ 25} Based on the forgoing reasoning, we see no abuse of discretion in the trial court's denial of Reed's motion for leave to file a delayed new-trial motion without a hearing. Reed's two assignments of error are overruled.

{¶ 26} The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and WELBAUM, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Andrew T. French
Rashaan O. Reed
Hon. Timothy N. O'Connell