[Cite as *State v. Reed*, 2024-Ohio-5412.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. Nos. 30075; 30076 |
| | : | |
| v. | : | Trial Court Case No. 2001 CR 04126 |
| | : | |
| RAHSAAN O. REED | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on November 15, 2024

. . . . . . . . . . .

BRIAN C. HOWE, Attorney for Appellant

MATHIAS H. HECK, JR., by MICHAEL P. ALLEN, Attorney for Appellee

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Defendant-Appellant Rahsaan O. Reed appeals from two orders of the Montgomery County Common Pleas Court denying his post-conviction applications for DNA testing. For the following reasons, we will affirm the February 8, 2024 order of the

trial court that denied Reed's application to conduct DNA testing pursuant to R.C. Chapter 2953, but we will reverse the February 15, 2024 order of the trial court that denied Reed's motion to conduct DNA testing at his own expense.  The cause will be remanded for further proceedings consistent with this opinion.

I.     Facts and Course of Proceedings

{¶ 2} On the evening of October 21, 2000, Joseph Smith was shot and killed.  In 2002, a jury in the Montgomery County Court of Common Pleas found Reed guilty of murder, with a firearm specification, and tampering with evidence.  The trial court sentenced Reed to 15 years to life imprisonment for the murder conviction and two years in prison for tampering with evidence, to be served consecutively to each other and to another sentence issued in a Miami County case.  In addition, the trial court sentenced Reed to three years in prison for the firearm specification.  Reed's aggregate sentence in the Montgomery County case was 20 years to life in prison.  Reed filed an appeal from the trial court's judgment.

{¶ 3} On direct appeal, Reed contended that (1) he was denied his right to a fair trial when the trial court sustained objections to certain testimony; (2) the verdict was against the manifest weight of the evidence; and (3) the trial court improperly denied Reed's motion for a judgment of acquittal under Crim.R. 29.  On November 26, 2003, we overruled all three assignments of error and affirmed the judgment of the trial court. *State v. Reed*, 2003-Ohio-6536 (2d Dist.).

{¶ 4} In September 2010, Reed filed a pro se motion for leave to file a motion for

a new trial claiming that his sentence was void under *State v. Singleton*, 2009-Ohio-6434. The trial court denied his motion but resentenced Reed to correct the imposition of post-release control and an error in the judgment entry.

{¶ 5} Between 2014 and 2019, Reed filed several motions for leave to file a delayed motion for a new trial, primarily based on the arguments that another individual, Patron Steele, had committed the murder and that several of the State's witnesses had lied when they testified that they did not receive any consideration or leniency from the State in exchange for their testimony. The trial court overruled these motions, and we affirmed the trial court's decisions on appeal. *State v. Reed*, 2015-Ohio-3051 (2d Dist.); *State v. Reed*, 2019-Ohio-3295 (2d Dist.); *State v. Reed*, 2020-Ohio-3574 (2d Dist.), *rev'd,* 2022-Ohio-1327.

{¶ 6} On October 12, 2023, Reed filed an application for DNA testing pursuant to R.C. Chapter 2953. Reed sought DNA testing of a cigarette butt and a 9mm casing found near the murder scene. According to Reed, DNA testing would be outcome determinative in at least the following ways: (1) if Steele's DNA were found on the 9mm casing from the scene of the murder, then it would show Reed was indisputably innocent; (2) if Steele's DNA were found on the cigarette butt found in the alleyway, then it would be strong circumstantial evidence pointing to Reed's innocence; and (3) if the same unknown DNA profile were recovered from both the casing and the cigarette butt and the profile excluded Reed, then there was a strong probability that a new jury would find reasonable doubt relating to whether Reed killed Smith. Reed also explained that he had met the other requirements under R.C. 2953.74 to permit DNA testing.

**{¶ 7}** The State opposed Reed's application for DNA testing. According to the State, DNA testing of the cigarette butt and the casing would not be outcome determinative because (1) the presence of touch DNA on a shell casing was not, by itself, determinative of who may have fired the gun; (2) it was reasonable and likely that someone unrelated to the murder at all had discarded the cigarette butt; and (3) there was a strong probability that the jury would still have convicted Reed even if the casing and cigarette butt had tested for another individual's DNA.

**{¶ 8}** Reed also filed a separate motion to allow his expert access to evidence for DNA testing at Reed's expense. Reed argued that there was no valid reason to oppose DNA testing because testing could be performed at no expense to the State, there was sufficient parent sample to perform the test, and the State's interest was in seeking the truth. According to Reed, "[i]f testing produces inconclusive or even inculpatory results, no party but Reed is worse off for having spent time and effort subjecting evidence to modern forensics. On the other hand, DNA testing could provide definitive truth that Patron Steele or another person was the last one to have handled the 9mm casing and cigarette butt." Motion to Allow Defense Expert Access to Evidence (Oct. 12, 2023), p. 3-4.

**{¶ 9}** The State opposed Reed's motion to allow DNA testing at his expense. According to the State, allowing Reed to perform DNA testing without meeting the statutory requirements solely because he offered to pay for the testing would create "the appearance of a 'pay-wall' by which only inmates with access to funds may get an extra 'bite at the apple.' " State's Memorandum Contra Defendant's Request for Expert

Access (Feb. 6, 2024), p. 2-3. Further, the State argued that allowing "an inmate to hire a lab or expert to test DNA without going through the proper channels would create a windfall of requests that would inundate crime labs, courts, police departments, and prosecutor's offices to hand over evidence any time an inmate requests." *Id.* at 3. The State contended that R.C. 2953.84 was "limited and vague" and that courts should still require an applicant to prove that the DNA testing would be outcome determinative prior to granting any such request for testing. *Id.*

{¶ 10} On February 8, 2024, the trial court overruled Reed's application for postconviction DNA testing pursuant to R.C. Chapter 2953. The court explained that Reed had failed to establish that the DNA tests on the cigarette butt and the shell casing would have been outcome determinative at the trial stage in this case. The trial court noted that the following evidence in the case was substantial with respect to implicating Reed in the crime of which he was convicted: (1) six witnesses testified that Reed had admitted to shooting Smith; (2) on October 21, 2000, Reed and Smith were at the Windsor Avenue location at the same time; (3) a gunshot was heard by a neighbor witness after Reed and Smith were separated from the group; (4) Reed made a threatening statement with respect to Smith when he was with the group; (5) Reed had a motive for shooting Smith; and (6) Steele's connection to the murder was supported only by a motive.

{¶ 11} On February 15, 2024, the trial court also overruled Reed's motion for defense expert access to physical evidence for testing at Reed's expense. The court stated, in part:

It appears, under an initial reading of R.C. 2953.84, that the court

should grant defendant's motion. The court has not found any guidance as to any parameters for testing under this section. The court finds that the absence of defendant's DNA in the case sub judice would not create a strong probability of a different outcome. Allowing defendant to test the DNA at his own expense would not offer defendant any relief based on this. Under the specific facts in this case, the court does not find defendant's request well-taken.

Decision (Feb. 15, 2024), p. 2.

{¶ 12} Reed filed timely notices of appeal from the trial court's orders denying his requests for DNA testing.

II.     The Trial Court Did Not Abuse Its Discretion in Denying Reed's Application for Postconviction DNA Testing Pursuant to R.C. Chapter 2953

{¶ 13} Reed's first assignment of error states:

THE TRIAL COURT ERRED BY DENYING APPELLANT'S STATUTORY APPLICATION FOR DNA TESTING.

{¶ 14} We review a trial court's decision to accept or reject an eligible inmate's application for DNA testing for an abuse of discretion. *State v. Nalls*, 2007-Ohio-1676, ¶ 18 (2d Dist.), citing R.C. 2953.74(A); *State v. Scott*, 2022-Ohio-4277, ¶ 10. "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary." *State v. Darmond*, 2013-Ohio-966, ¶ 34, citing *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

{¶ 15} "Ohio law provides eligible offenders the opportunity to apply for postconviction DNA testing as described in R.C. 2953.71 through 2953.81." *Scott* at ¶ 6, citing R.C. 2953.73. The circumstances under which a trial court may accept an application for postconviction DNA testing are described in R.C. 2953.74. When Reed was tried for the murder of Smith in the early 2000s, DNA testing was not conducted on the cigarette butt and casing. Consequently, Reed's application for postconviction DNA testing falls under R.C. 2953.74(B)(1). That section requires Reed to show "that DNA exclusion when analyzed in the context of and upon consideration of all available admissible evidence related to the subject offender's case as described in division (D) of [R.C. 2953.74] would have been outcome determinative at that trial stage in that case, and, at the time of the trial stage in that case, DNA testing was . . . not yet available."

{¶ 16} Further, a court may accept an R.C. 2953.73 application for DNA testing only if it determines that all six of the conditions in R.C. 2953.74(C) apply. The conditions include: (1) biological material was collected from "the crime scene or the victim" and that the parent sample still exists; (2) there was sufficient parent material to extract a test sample; (3) the identity of the perpetrator was at issue at trial; (4) one or more of the defense theories asserted by the offender at the trial stage was of such a nature that, if DNA testing were conducted and an exclusion result were obtained, the exclusion result would be outcome determinative; (5) "if DNA testing is conducted and an exclusion result is obtained, the exclusion result would be outcome determinative regarding that offender;" and (6) the parent sample and the extracted test sample are the same sample as collected and that there is no reason to believe that they have been out of state custody or have

been tampered with or contaminated since they were collected.   R.C. 2953.74(C)(1)-(6).

{¶ 17} The trial court denied Reed's application for DNA testing under R.C. Chapter 2953 based on a finding that the DNA testing would not be outcome determinative.   " 'Outcome determinative' means that 'there is a strong probability that no reasonable factfinder would have found the offender guilty of [the] offense' for which he or she was convicted if the DNA results had been presented and found relevant and admissible at trial and 'had those results been analyzed in the context of and upon consideration of all available admissible evidence related to the offender's case.' "   *Scott* at ¶ 7, quoting R.C. 2953.71(L).   In deciding if the outcome-determinative requirement has been satisfied, trial courts " 'shall consider all available admissible evidence related to the subject offender's case.' "   *Id.*, quoting R.C. 2953.74(D).   Further, "the statutory scheme requires the trial court reviewing an application for postconviction DNA testing to presume that an 'exclusion result'—that is, a result that 'scientifically precludes or forecloses' the offender as a contributor, R.C. 2953.71(G)—will be obtained by the offender."   *Id.* at ¶ 11, citing R.C. 2953.74(C)(4).

{¶ 18} In *Reed*, 2003-Ohio-6536 (2d Dist.), we summarized much of the key evidence at trial when we concluded that Reed's murder conviction was not against the manifest weight of the evidence.   We stated, in pertinent part:

> We have no problem finding extensive evidence to support the guilty verdicts on both the murder and the tampering-with-evidence charges. R.C. 2903.02(B) provides that a person commits murder when he "cause[s] the death of another as a proximate result of the offender's's [sic] committing or

attempting to commit an offense of [violence] that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code." The state alleged that Smith's death was the proximate result of a felonious assault by Reed. Beginning with Reed's presence at the scene of the crime, Robinson and Jones testified that they, along with Manns, Smith, and Reed, arrived at Reed's residence shortly after 11:00 p.m. on October 21, 2000. Robinson and Jones further testified that Reed and Smith went down the sidewalk alongside Reed's apartment building toward the alley behind it. They both testified that they, along with Manns, went inside Reed's apartment. Jones testified that they sat down and began to watch television. She further stated that after 10 or 15 minutes, Robinson went outside to look for Reed. Robinson testified that he walked to the end of the sidewalk, and he soon saw Reed walking toward him from the alley. Egler testified that shortly after 11:00 p.m., he heard voices, followed by a gunshot. He testified that he initially took cover, then retrieved a flashlight that was located a few steps from the bathroom. He went to the bathroom window, called his wife over to look, and then they called the police. Officer Mamula testified that he was dispatched to the Egler's address at 11:26 p.m. Although there were no eyewitnesses to the shooting of Joseph Smith, a rational fact finder could find, based on the circumstantial evidence presented, that Reed was present in the alley at the time that Smith was shot, i.e., between shortly after 11:00 p.m. and just

before 11:26 p.m.

The jury was also presented with ample circumstantial evidence that Reed was in possession of the gun used to kill Smith and that he used the gun to kill him. Both Robinson and Jones testified that Reed possessed a gun on the night of the shooting. Robinson testified that before entering the "after-hours joint" subsequent to leaving Reed's apartment on October 21, 2000, Reed held a gun and asked whether he could bring the weapon inside. Jones likewise testified to this conversation. Robinson identified the weapon as a plastic type Glock 9 millimeter. Jeffrey Holmes, a Dayton police officer assigned to the crime scene investigations unit, testified that a 9-millimeter shell casing was found next to Smith's body in the alley and that the lead portion of a bullet was located in the back door frame of Egler's home. Robinson, Jones, Wendling, Holloway, Young, and Shoemaker each testified that Reed told them that he had shot Smith. The jury could have reasonably determined that Reed possessed a firearm while he was in the alley with Smith and that Reed shot Smith on October 21, 2000. In other words, the jury could have reasonably concluded, beyond a reasonable doubt, that Reed had caused the death of Joseph Smith as a proximate result of committing the offense of felonious assault.

*Id.* at ¶ 52-53

**{¶ 19}** The question before us in this assignment of error is whether the trial court abused its discretion by finding that the DNA tests sought by Reed would not be outcome

determinative under R.C. Chapter 2953. In the present case, if Reed secured exclusion results from DNA testing, then he would be able to establish, at most, that he did not leave DNA on the cigarette butt found near the scene of Smith's murder or the casing of the bullet that killed Smith. For purposes of this analysis, we are not required by the statute to presume that the DNA testing would also return a CODIS match that identifies someone other than Reed as the individual who left DNA evidence on the cigarette butt and casing. *Scott*, 2022-Ohio-4277, at ¶ 9. Assuming that the DNA test would establish that Reed left no DNA evidence on the cigarette butt and casing, the other evidence presented at trial would remain. That evidence included six witnesses who testified that Reed had admitted to them that he killed Smith. Further, evidence was presented that linked Reed in close proximity and time to the murder and established that Reed had possession of a 9mm handgun on the same evening Smith was shot and killed with a 9mm bullet.

{¶ 20} Based on a consideration of the evidence submitted in the underlying trial and the arguments of the parties, we cannot conclude that the trial court abused its discretion when it found that exclusion results from DNA testing of the cigarette butt and shell casing would not be outcome determinative pursuant to R.C. Chapter 2953. Therefore, the first assignment of error is overruled.

III. The Trial Court Abused Its Discretion by Applying the Outcome Determinative Test to Reed's Motion to Conduct DNA Testing at His Own Expense

{¶ 21} Reed's second assignment of error states:

THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION

TO ALLOW DEFENSE EXPERT ACCESS TO EVIDENCE FOR TESTING

AT DEFENDANT'S EXPENSE.

**{¶ 22}** The trial court denied Reed's motion to allow his expert to have access to conduct DNA testing at Reed's expense based on its finding that "the absence of defendant's DNA in the case sub judice would not create a strong probability of a different outcome. Allowing defendant to test the DNA, at his own expense would not offer defendant any relief based on this." Decision (Feb. 15, 2024), p. 2.

**{¶ 23}** Reed argues that the trial court's ruling "explicitly contradicts" R.C. 2953.84 by applying an outcome determinative statutory test to a non-statutory request for DNA testing. Reed contends that neither the State nor the trial court provided "any explanation for why such testing would be inappropriate or harmful." Appellant's Brief, p. 23. According to Reed, allowing him "to access this evidence will not harm the people of Ohio, nor damage or inconvenience the State or the Court." *Id.* Reed believes "the State has no inherent interest in remaining ignorant as to the source of DNA on physical evidence in a murder case." Appellant's Reply Brief, p. 6.

**{¶ 24}** The State conceded at oral argument that the trial court overruled Reed's application for DNA testing at his own expense based on the outcome determinative test in R.C. Chapter 2953. Despite this, the State contends that granting Reed's expert access to conduct DNA testing at Reed's sole expense would "essentially be creating a two-tiered system of justice, one for those who can afford it, and one for those who can't." Appellee's Brief, p. 9. The State also points out that "allowing anyone with the ability to pay to take evidence and have it tested on their own creates problematic chain of custody

issues as well as the potential to overwhelm testing labs. Without proper protocols in place, the risk of court exhibits and case evidence going missing, whether intentionally or accidentally, rises." *Id.* Finally, the State argues that "at no time has Reed put forth what lab would do his requested testing, or what procedures he would follow if granted access to the evidence." *Id.*

{¶ 25} The trial court was directly influenced in its decision by its finding that Reed had failed to show that the DNA testing would be "outcome determinative" pursuant to R.C. Chapter 2953. However, Reed's separate request for access to have his own expert conduct DNA testing was not brought pursuant to R.C. Chapter 2953. Importantly, R.C. 2953.84 provides that R.C. 2953.71 to 2953.81 "are not the exclusive means by which an offender may obtain postconviction DNA testing," and the provisions of R.C. 2953.71 to 2953.81 "do not limit or affect any other means by which an offender may obtain postconviction DNA testing." Based on the plain language of R.C. 2953.84, the "outcome determinative" test contained in these provisions cannot be used to limit or affect any requests for DNA testing at the applicant's expense made outside R.C. 2953.71 to 2953.81. *See also* 2005 Ohio Atty.Gen.Ops. No. 2005-009.

{¶ 26} Reed is represented by the Ohio Innocence Project in this appeal. We have previously addressed the Innocence Project's willingness to pay for DNA testing. In *State v. Emerick*, 2011-Ohio-5543 (2d Dist.), we stated, in pertinent part:

> At the July 9, 2010 hearing, counsel for Emerick informed the trial court that the Innocence Project would pay for any additional DNA testing that was permitted by the court. R.C. 2953.71 specifically states that an

"application" under the postconviction DNA statute means a request "for the state to do DNA testing on biological material." A request to permit the defendant to conduct post-conviction DNA testing funded by a private source would not fall under R.C. 2953.71.

Such a request is permitted by R.C. 2953.84, which was enacted in Senate Bill 262. . . .

Provided that a sufficient parent sample is available and the chain of custody is maintained, we see no reason why a trial court would decline a request for post-conviction DNA testing by the defendant when conducted at the defendant's own or another private entity's expense. We emphasize that any request for DNA testing outside of the provisions of R.C. 2953.71 to 2953.82 would not require the State to provide a list of all existing biological materials, as required by those sections.

Although the Innocence Project expressed its intent to pay for additional DNA testing, Emerick has consistently asserted that he is entitled to DNA testing under the statutory criteria, not R.C. 2953.84. The trial court did not err in focusing on the statutory requirements for additional DNA testing. *See State v. Constant*, Lake App. No. 2008-L-100, 2009-Ohio-3936.

*Id.* at ¶ 58, fn. 3.

**{¶ 27}** We have not had a recent occasion to address our statement from *Emerick*, which admittedly was dicta. However, in *State v. Gavin*, 2022-Ohio-3027 (4th Dist.), the

Fourth District followed our statement in *Emerick* when it was faced with an appeal from the trial court's denial of an application for postconviction DNA testing as well as a motion for defense access to evidence for testing at the applicant's own expense. The Fourth District first held that the trial court had abused its discretion by denying the application for postconviction DNA testing because the trial court incorrectly found that the testing would not be outcome determinative. The *Gavin* court then concluded that the trial court had also abused its discretion by denying Gavin's request for expert access for independent testing at his own expense. The court stated that "[o]ur reasoning is primarily based upon our disposition of Gavin's first assignment of error, which found that such testing would be outcome determinative, as well as the fact that such testing would not be an economic burden to the state." *Id.* at ¶ 47. The court then noted that its decision was consistent with the decision of *State v. Johnson*, 2014-Ohio-2646, ¶ 21 (8th Dist.), in which the Eighth District noted that the applicant was "bearing the cost of DNA testing through non-public means; therefore, testing will not financially burden the state." The *Gavin* court concluded that the trial court had abused its discretion in summarily denying the motion for access to conduct independent testing at the movant's own expense, "which should have been granted provided there is a sufficient parent sample and the chain of custody can be maintained." *Gavin* at ¶ 48.

{¶ 28} We conclude that the trial court abused its discretion by denying Reed's request for DNA testing at his own expense based solely on a finding that the test results "would not create a strong probability of a different outcome." R.C. 2953.84 specifically precludes the trial court from overruling a motion for DNA testing made outside the

provisions of R.C. 2953.71 to R.C. 2953.81 based solely on a failure to show the test would be outcome determinative.

**{¶ 29}** The second assignment of error is sustained.

IV.     Conclusion

**{¶ 30}** Having sustained Reed's second assignment of error, we will reverse the February 15, 2024 order of the trial court on appeal in Montgomery C.A. No. 30076 and remand the cause to the trial court for further proceedings consistent with this opinion. We will affirm the February 8, 2024 order of the trial court on appeal in Montgomery C.A. No. 30075.

. . . . . . . . . . . .

WELBAUM, J. and TUCKER, J., concur.