[Cite as *State v. Simpson*, 2025-Ohio-4684.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 30420 |
| Appellee | : | |
| | : | Trial Court Case No. 2002 CR 00982/1 |
| v. | : | |
| | : | (Criminal Appeal from Common Pleas |
| PARIS ORLANDO SIMPSON | : | Court) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on October 10, 2025, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

ROBERT G. HANSEMAN, JUDGE

TUCKER, J., and LEWIS, J., concur.

**OPINION**

MONTGOMERY C.A. No. 30420

PARIS ORLANDO SIMPSON, Appellant, Pro Se
MICHAEL P. ALLEN, Attorney for Appellee

HANSEMAN, J.

{¶ 1} Appellant Paris Orlando Simpson appeals pro se from a judgment of the Montgomery County Court of Common Pleas denying his application for postconviction DNA testing. For the reasons outlined below, we affirm the judgment of the trial court.

**Facts and Course of Proceedings**

{¶ 2} In 2003, Simpson received a sentence of 33 years to life in prison after a jury found him guilty of felonious assault, aggravated robbery, and felony murder. The felonious assault charge stemmed from Simpson and his brother severely beating a 57-year-old man in the street. The aggravated robbery and felony murder charges stemmed from Simpson and his brother fatally beating a different man named Jerald Turner and stealing Turner's wallet. In 2004, this court affirmed all of Simpson's convictions on direct appeal. *State v. Simpson*, 2004-Ohio-669 (2d Dist.).

{¶ 3} Fourteen years after his direct appeal, Simpson filed a motion for resentencing in which he claimed the trial court had improperly imposed post-release control. The State conceded error in that regard, and the trial court resentenced Simpson and issued an amended sentencing entry. Simpson appealed from the amended sentencing entry and filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967). After conducting an *Anders* review, this court found that no non-frivolous issues existed for appeal and affirmed the judgment of the trial court. *State v. Simpson*, 2020-Ohio-2961 (2d Dist.).

2

{¶ 4} Following the *Anders* appeal, on November 19, 2024, Simpson filed an application for postconviction DNA testing pursuant to R.C. 2953.72. Simpson later requested an evidentiary hearing on the application. In the application, Simpson acknowledged that the State had presented several witnesses at trial who testified to seeing him and his brother beat up Turner on the night in question. Simpson also acknowledged that some of the witnesses had testified to seeing him remove Turner's shoes, root through Turner's pockets, and steal Turner's wallet. Simpson, however, argued that DNA testing was never conducted on Turner's clothing, shoes, wallet, or the wallet's contents, and that since the time of his trial, there have been advancements in touch DNA testing that warranted postconviction testing on those items. Simpson claimed that the results of such testing would exclude his DNA and thus exonerate him from the aggravated robbery and felony murder offenses.

{¶ 5} In response to Simpson's application, the State conceded that Simpson was eligible to apply for postconviction DNA testing under R.C. 2953.72(C)(1), that DNA testing was not readily available in 2002 when the offenses in question were committed, and that DNA testing had not been performed on any of the evidence in Simpson's case. The State, however, argued that Simpson's application for postconviction DNA testing should be denied because even if the DNA test results excluded Simpson's DNA from the items tested, those results would not be outcome determinative as required by R.C. 2953.74.

{¶ 6} After reviewing the parties' arguments, the trial court agreed with the State and issued a decision denying Simpson's application for postconviction DNA testing without holding a hearing. The trial court stated the following in its decision:

Defendant here is requesting the Court to order DNA testing of various items of clothing as well as the wallet and credit cards belonging to the victim.

3

Defendant argues that he took no part in the robbery and presumably that the absence of his DNA on the victim's clothing and other items would scientifically exclude him. This Court disagrees. The absence of Defendant's DNA on these items does not exclude the possibility that he participated in the robbery and murder of Mr. Turner. There could be any number of reasons that his DNA would not be found. Three separate witnesses testified that they witnessed this Defendant participate in the beating and/or robbery of Mr. Turner. In light of the strong eyewitness testimony in this case, Defendant has not demonstrated how the presence or absence of DNA in this case would create a "strong probability that no reasonable factfinder would have found the offender guilty of that offense" and therefore be outcome determinative. *See* [*State v. Harwell*, 2022-Ohio-2706, ¶ (2d Dist.)].

In addition, Defendant's identity is not in question here as required by R.C. 2953.74(C). Every witness that testified, including Defendant himself, placed him at the scene of this robbery and murder. While Defendant's testimony regarding his level of participation differed from that of the State's witnesses, everyone agreed that Defendant was there. Accordingly, identity was not an issue at trial.

Order and Entry Denying Defendant's Application for Postconviction DNA Testing (Feb. 28, 2025), Dkt. No. 16, p. 7-8.

{¶ 7} Simpson now appeals from the trial court's denial of his application for postconviction DNA testing and raises three assignments of error for review. Because Simpson's first two assignments of error are interrelated, we will address them together.

4

**First and Second Assignments of Error**

{¶ 8} Under his first and second assignments of error, Simpson claims that the trial court abused its discretion by denying his application for postconviction DNA testing because the court erroneously determined that: (1) his identity as one of the assailants was not in question during his trial; and (2) DNA test results excluding his DNA would not be outcome determinative.

*Standard of Review*

{¶ 9} The Supreme Court of Ohio has explained that "a trial court should exercise its discretion in determining its best course of action when considering an application for DNA testing in an effort to best utilize judicial resources." *State v. Buehler*, 2007-Ohio-1246, ¶ 31. Therefore, "[w]e review a trial court's decision to accept or reject an eligible inmate's application for postconviction DNA testing for an abuse of discretion." *State v. Scott,* 2025-Ohio-299, ¶ 8 (2d Dist.), citing *State v. Nalls*, 2007-Ohio-1676, ¶ 18 (2d Dist.), citing R.C. 2953.74(A); *State v. Scott*, 2022-Ohio-4277, ¶ 10. "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary." *State v. Darmond*, 2013-Ohio-966, ¶ 34, citing *State v. Adams*, 62 Ohio St.2d 151, 157 (1980). "An abuse of discretion most often involves an unreasonable decision that is not supported by a sound reasoning process." *State v. McHenry*, 2021-Ohio-3118, ¶ 16 (2d Dist.), citing *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990).

*Law Governing Applications for Postconviction DNA Testing*

{¶ 10} "Ohio law provides eligible offenders the opportunity to apply for postconviction DNA testing as described in R.C. 2953.71 through 2953.81." *Scott,* 2022-Ohio-4277 at ¶ 6, citing R.C. 2953.73. "The circumstances under which a trial court may accept an application

5

for postconviction DNA testing are described in R.C. 2953.74." *Id*. As relevant to this case, R.C. 2953.74(B)(1) provides that:

> [T]he court may accept the application only if . . .
>
> (1) The offender did not have a DNA test taken at the trial stage in the case in which the offender was convicted of the offense for which the offender is an eligible offender and is requesting the DNA testing regarding the same biological evidence that the offender seeks to have tested, the offender shows that DNA exclusion when analyzed in the context of and upon consideration of all available admissible evidence related to the subject offender's case as described in division (D) of this section would have been outcome determinative at that trial stage in that case, and, at the time of the trial stage in that case, DNA testing was not generally accepted, the results of DNA testing were not generally admissible in evidence, or DNA testing was not yet available.

{¶ 11} Under this statutory scheme, a trial court is precluded "from accepting an application for DNA testing unless an eligible inmate can show, in cases where the inmate did not have DNA testing at trial, that an exclusion result would be outcome-determinative." *Buehler,* 2007-Ohio-1246 at ¶ 30. "An 'exclusion result' is a DNA test result 'that scientifically precludes or forecloses the subject offender as a contributor of biological material recovered from the crime scene or victim in question.' " *Scott*, 2022-Ohio-4277 at ¶ 7, quoting R.C. 2953.71(G). In other words, it is "a result that 'scientifically precludes or forecloses' the offender as a [DNA] contributor[.]" *Id*. at ¶ 11, quoting R.C. 2953.71(G).

{¶ 12} "'Outcome determinative' means that 'there is a strong probability that no reasonable factfinder would have found the offender guilty of [the] offense' for which he or

she was convicted if the DNA results had been presented and found relevant and admissible at trial[.]" *Id.* at ¶ 7, quoting R.C. 2953.71(L). "'[T]he court, in determining whether the "outcome determinative" criterion described in division[ ] (B)(1) . . . of [R.C. 2953.74] has been satisfied, shall consider all available admissible evidence related to the subject offender's case." *Id.*, quoting R.C. 2953.74(D). "[I]f a trial court decide[s] that a DNA test exclusion result would not be outcome-determinative, the court would have no obligation to accept the application[.]" *Buehler* at ¶ 31.

{¶ 13} In addition to meeting the requirements of R.C. 2953.74(B), an application for postconviction DNA testing must also satisfy six factors listed in R.C. 2953.74(C). "If any of the six factors listed in R.C. 2953.74(C) is not satisfied, the court is precluded from accepting the application." *State v. Hayden*, 2005-Ohio-4025, ¶ 19 (2d Dist.). One of the six factors requires the trial court to determine that, "at the trial stage in the case in which the offender was convicted . . ., the identity of the person who committed the offense was an issue." R.C. 2953.74(C)(3). Another one of the factors requires the trial court to determine that an "exclusion result" from the requested DNA testing would be "outcome determinative regarding that offender." R.C. 2953.74(C)(5). Therefore, both R.C. 2953.74(C) and (B) require the trial court to find that a DNA test exclusion result would be outcome determinative.

{¶ 14} We note that "the statutory scheme requires the trial court reviewing an application for postconviction DNA testing to presume that an 'exclusion result' . . . will be obtained by the offender." *Scott,* 2022-Ohio-4277 at ¶ 11, citing R.C. 2953.74(C)(4). "With that presumed result in mind, the trial court must determine whether such a result would be outcome determinative for the offender." *Id.*, citing R.C. 2953.74(C)(5).

{¶ 15} In *State v. Reed*, 2024-Ohio-5412 (2d Dist.), this court addressed whether the trial court abused its discretion by denying an application for postconviction DNA testing on grounds that DNA test exclusion results would not be outcome determinative. The appellant in *Reed* was convicted of murder and sought postconviction DNA testing on a cigarette butt and a nine-millimeter shell casing that was found near the murder scene. *Reed* at ¶ 2 and ¶ 6. Upon review, we found that even if "the DNA test would establish that [the appellant] left no DNA evidence on the cigarette butt and casing, the other evidence presented at trial would remain." *Id*. at ¶ 19. "That evidence included six witnesses who testified that [the appellant] had admitted to them that he killed [the victim]." *Id*. Evidence was also presented "that linked [the appellant] in close proximity and time to the murder and established that [the appellant] had possession of a 9mm handgun on the same evening [the victim] was shot and killed with a 9mm bullet." *Id*.

{¶ 16} When considering the evidence presented at the appellant's trial, we found that the trial court in *Reed* had reasonably determined that DNA test results excluding the appellant's DNA from the cigarette butt and shell casing would not have been outcome determinative. *Id*. at ¶ 19-20. Specifically, we found that if the appellant "secured exclusion results from DNA testing, then he would be able to establish, at most, that he did not leave DNA on the cigarette butt found near the scene of [the] murder or the casing of the bullet that killed [the victim.]" *Id*. at ¶ 19. Accordingly, we found no abuse of discretion and affirmed the trial court's judgment denying the appellant's application for postconviction DNA testing. *Id*. at ¶ 20 and ¶ 30.

{¶ 17} This court also reviewed the denial of an application for postconviction DNA testing in *State v. Harwell*, 2022-Ohio-2706 (2d Dist.). In *Harwell*, the appellant kidnapped two victims and fired several gunshots that killed one of them. After a jury found the appellant

8

guilty of several offenses arising from that conduct, the appellant sought postconviction DNA testing on the surviving victim's shirt and shell casings found at the scene of the shooting. *Id*. at ¶ 24. The trial court denied the application on grounds that it failed to meet the criteria listed in R.C. 2953.74(B)(1) and (C). Specifically, the trial court found that the appellant's "identity was not at issue during the trial, and therefore the DNA testing would not be outcome determinative." *Id*.

{¶ 18} When reviewing the trial court's judgment in *Harwell*, we considered that multiple witnesses, including the sole surviving kidnapping and shooting victim, had identified the appellant in a photo spread and at trial. *Id*. at ¶ 33-34. We also considered that there was evidence establishing that the appellant's cell phone was in the area of the shooting and that the appellant had made multiple calls to the victims and witnesses around the time of the offenses in question. *Id*. at ¶ 35. In light of this evidence, we found that the identity of the appellant as the individual who committed the offenses was not an issue during trial and that "the trial court did not err by denying [the appellant's] application on the authority of R.C. 2953.74(C)(3)." *Id*.

{¶ 19} We also explained in *Harwell* that even if we had accepted the appellant's theory that testing the shell casings and the victim's shirt would have yielded a result showing the presence of another person's DNA, that such a result would not be outcome determinative because it would merely establish that someone else had touched the casings and had contact with the victim. *Id*. at ¶ 37. As a result, we found that the DNA results "would not negate the substantial amount of credible evidence of [the appellant's] involvement in the kidnappings and murder." (Citations omitted.) *Id*. Accordingly, we affirmed the trial court's denial of the appellant's application for postconviction DNA testing. *Id*. at ¶ 38.

9

*Analysis*

**{¶ 20}** As previously discussed, Simpson claims that the trial court abused its discretion by denying his application for postconviction DNA testing because it erroneously determined that: (1) identity was not an issue during his trial; and (2) that DNA test results excluding his DNA from Turner's clothing and wallet/wallet contents would not be outcome determinative. In support of this claim, Simpson raises multiple arguments that challenge the sufficiency of the evidence that was used to convict him of aggravated robbery and felony murder. Simpson also raises multiple arguments that challenge his indictment and the prosecutor's conduct at trial. All of those arguments, however, are barred by res judicata because they could have been raised on direct appeal. *State v. Roweton*, 2025-Ohio-2027, ¶ 19 (2d Dist.) ("[i]t is well established that res judicata bars the consideration of issues that could have been raised on direct appeal"), citing *State v. Saxon*, 2006-Ohio-1245, ¶ 17. In this appeal, we simply must determine whether it was an abuse of discretion for the trial court to find that identity was not an issue during Simpson's trial and that DNA test exclusion results would not be outcome determinative. Therefore, we will confine our analysis to those issues and disregard Simpson's other claims.

**{¶ 21}** The trial record establishes that the State presented three eyewitnesses who testified to seeing Simpson and his brother beat up Turner on the night in question. Two of the eyewitnesses testified that they had known Simpson and his brother before the incident and had recognized them as the assailants while the incident was happening. The same two witnesses also testified to seeing Simpson pull down Turner's pants and take off one of Turner's shoes. One of the witnesses also specifically testified to seeing Simpson go through Turner's pockets.

10

{¶ 22} Simpson and his brother also testified at trial and admitted to being present at the crime scene and to physically fighting with Turner. Simpson specifically admitted to catching Turner's leg during the fight and to punching Turner in the chin. According to Simpson, it was his brother who pulled down Turner's pants and continuously stomped on Turner's face until he stopped moving.

{¶ 23} Based on the evidence presented at Simpson's trial, we find that the trial court reasonably determined that there was no issue regarding Simpson's identity as one of the two assailants involved in the murder/robbery of Turner. The record indicates that the matter at issue was simply Simpson's level of participation in the incident, not his identity, as the evidence not only placed Simpson at the crime scene, but also established that Simpson was a participant in the offenses. Like *Harwell*, 2022-Ohio-2706, (2d Dist.), even if the requested DNA test results excluded Simpson's DNA from Turner's clothing and wallet/wallet contents, such results would not refute the plethora of evidence establishing that Simpson was one of the two assailants who participated in the offenses.

{¶ 24} The trial court also reasonably determined that DNA test results excluding Simpson's DNA would not be outcome determinative. Based on the aforementioned evidence, there was not a strong probability that the absence of Simpson's DNA would have resulted in a reasonable trier of fact finding Simpson not guilty of the offenses in question. Indeed, the absence of Simpson's DNA would not override the testimony of three eyewitnesses who observed Simpson participate in the murder and aggravated robbery of Turner. Like *Reed*, 2024-Ohio-5412 (2d Dist.), even if Simpson secured exclusion results from DNA testing, those results would simply establish that he did not leave DNA on Turner's clothing and wallet/wallet contents. As noted by the trial court, there are many possible reasons for why that could happen. Accordingly, the absence of Simpson's DNA would not

11

exonerate him. Therefore, given all the evidence, we cannot say that the absence of Simpson's DNA would be outcome determinative.

{¶ 25} Because the trial court reasonably determined that identity was not an issue during Simpson's trial and that DNA exclusion test results would not be outcome determinative, we find that the trial court did not abuse its discretion by denying Simpson's application for postconviction DNA testing under the authority of R.C. 2974.53(B)(1), (C)(3), and (C)(5).

{¶ 26} Simpson's first and second assignments of error are overruled.

**Third Assignment of Error**

{¶ 27} Under his third assignment of error, Simpson claims that the trial court erred by failing to hold an evidentiary hearing on his application for postconviction DNA testing. R.C. 2953.73(D), however, clearly states that: "The court is not required to conduct an evidentiary hearing in conducting its review of, and in making its determination as to whether to accept or reject, the application." The court simply must "consider the application, the supporting affidavits, and the documentary evidence and, in addition to those materials, all the files and records pertaining to the proceedings against the applicant[.]" *Id*. Thereafter, the court must "'enter a judgment and order that either accepts or rejects the application and that includes within the judgment and order the reasons for the acceptance or rejection as applied to the criteria and procedures set forth in sections 2953.71 to 2953.81 of the Revised Code.'" *State v. Riley*, 2024-Ohio-5712, ¶ 13, citing R.C. 2953.73(D).

{¶ 28} In this case, we find that the trial court complied with the procedure outlined in R.C. 2953.73(D). Contrary to Simpson's claim otherwise, the record indicates that the trial court considered all the necessary documentation when ruling on Simpson's application for postconviction DNA testing. In addition, the trial court's judgment entry included the reasons

12

for the court's rejection of the application under R.C. 2953.74(B)(1), (C)(3), and (C)(5). Because the procedure outlined in R.C. 2953.73(D) does not require an evidentiary hearing, we cannot say that the trial court erred by failing to hold one.

{¶ 29} Simpson's third assignment of error is overruled.

## Conclusion

{¶ 30} Having overruled all of Simpson's assignments of error, the trial court's judgment denying Simpson's application for postconviction DNA testing is affirmed.

. . . . . . . . . . . . .

TUCKER, J., and LEWIS, J., concur.