NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13647

COMMONWEALTH  vs.  SHAWN L. TANNER.


Bristol.     November 3, 2025. – February 27, 2026.

Present:  Budd, C.J., Gaziano, Kafker, Wendlandt, Georges,
Dewar, & Wolohojian, JJ.


Deoxyribonucleic Acid.  Evidence, Scientific test, Relevancy and
     materiality.  Practice, Criminal, Postconviction relief,
     Reconsideration, Death of party, Judicial discretion.
     Death.  Statute, Construction.  Homicide.



Indictment found and returned in the Superior Court
Department on May 11, 1988.

Following review by this court, 417 Mass. 1 (1994), a
motion to vacate an order for postconviction forensic testing,
filed on August 15, 2023, was heard by Raffi N. Yessayan, J.

A request for leave to appeal was allowed by Kafker, J., in
the Supreme Judicial Court for the county of Suffolk.


David B. Mark, Assistant District Attorney, for the
Commonwealth.
Jessica Dormitzer (Jack Langa & India Mazzarelli also
present) for the defendant.
The following submitted briefs for amici curiae:
Andrea Joy Campbell, Attorney General, & Donna Jalbert
Patalano, Assistant Attorney General, for the Attorney General.
Lisa M. Kavanaugh, Harper Moutal, & Peter D. Tilley,
Committee for Public Counsel Services, & Joshua M. Daniels, for

Committee for Public Counsel Services Innocence Program
& another.
     Nathaniel R. Mendell & Megan E. Baffaro for Judith
Berberena & others.
     Suma V. Nair & Michael Avitzur for Boston Bar Association.
     Hannah L. Fitzsimons, of New York, Jessica K. Spencer, of
New Jersey, & Jeffrey Harris for Innocence Project, Inc.


     WOLOHOJIAN, J.  At issue is whether a judge erred in
denying the Commonwealth's motion to vacate an order allowing
the defendant's request for postconviction forensic
deoxyribonucleic acid (DNA) testing pursuant to G. L. c. 278A.
More specifically, the question is whether the judge was
required to vacate his earlier order because the defendant died
after the forensic testing had been ordered but before it was
completed, or whether the judge retained discretion to allow the
testing to go forward despite the defendant's death.  We
conclude that, in the absence of any statutory provision
directly controlling these circumstances, the judge retained
inherent authority to determine whether his earlier order should
be vacated.  We further conclude that, in the circumstances
presented here, the judge did not abuse his discretion in
denying the Commonwealth's motion to vacate.[1]

---

[1] We acknowledge the briefs submitted in support of the
defendant's argument by the Attorney General; the Committee for
Public Counsel Services Innocence Program and the Massachusetts
Association of Criminal Defense Lawyers; the Innocence Project,
Inc.; and Judith Berberena, Jill Paiva, and Chandra Gregory,
certain family members of victims killed by the New Bedford

Background.  In 1989, the defendant was convicted of murder in the first degree and of larceny under $250.  See Commonwealth v. Tanner, 417 Mass. 1, 6 (1994) (affirming conviction of murder in first degree after plenary review under G. L. c. 278, § 33E).  No DNA evidence was introduced at the defendant's trial, nor was any forensic DNA testing or analysis performed on various items and samples collected in connection with the investigation of the murder; DNA testing was not generally available at the time.  See Commonwealth v. Curnin, 409 Mass. 218, 221 (1991) (stating, in 1991, that "[t]he use of DNA testing for forensic purposes is of very recent origin").

We draw upon the background recited in our decision affirming the defendant's murder conviction, supplemented where necessary by the record.  See Tanner, 417 Mass. at 2-3.  The Commonwealth's evidence at trial showed that the victim had been strangled to death in a motel room on April 28, 1988.  A stocking had been tightened around the victim's neck three times and was determined to be the cause of death.  Shortly after the murder, the defendant told a friend that he thought he had killed someone, and that a woman had refused to have sexual intercourse with him because he did not have any money.  He said "he had intercourse with her anyway and then strangled her with

highway murderer.  We further acknowledge the amicus letter submitted by the Boston Bar Association.

his bare hands.  To make sure, he said, he took a sock and strangled her again, 'pulled it real tight.'"  Id. at 3.  The defendant showed the friend several pieces of jewelry that he had taken from the woman, one of which he used to pay the friend for drugs.  Later, the defendant offered the friend two additional rings he said he had hidden in a restaurant bathroom. Those rings were subsequently located by police.

The defendant testified in his own defense.  While he admitted that he had been in the motel room with the victim on the night of the murder and that he had had sexual intercourse with her in exchange for forty dollars, he claimed that she was alive when he left and that another man (whom the defendant did not know but described in detail) entered the room after him.

More than thirty years after his convictions, the defendant, through his counsel at the New England Innocence Project, arranged for a private investigator to inspect and photograph evidence stored by the State police, including the stocking used to strangle the victim, scrapings obtained from beneath the victim's fingernails, bedsheets, towels, and hairs collected from the motel room, and the rings stolen from the victim.

Thereafter, in March 2022, the defendant filed a motion, pursuant to G. L. c. 278A, seeking postconviction DNA analysis

of the items photographed by the private investigator.[2]  While acknowledging that he had sexual contact with the victim on the night of the murder and thus that DNA analysis likely would confirm his presence, the defendant argued that the presence of another person's DNA would support his trial testimony that another man had been with the victim after the defendant left the motel room and could thus potentially lead to the identification of the perpetrator of the murder.  The motion was supported by an affidavit from counsel detailing her unsuccessful efforts to obtain the district attorney's office's agreement for forensic testing of the items in the Commonwealth's custody.  In addition, the motion was supported by an affidavit from the defendant in which he asserted that he was factually innocent of the victim's murder.

The Commonwealth did not file a written opposition to the defendant's motion.  However, at one of two hearings on the motion, the prosecutor raised two specific objections.  First, the prosecutor argued that one of the bloody towels, the rings, and the bed sheets might be contaminated because they had been introduced as exhibits and might have been handled by persons,

---

[2] Not long before filing his motion for forensic testing, the defendant had been diagnosed with terminal brain cancer. The judge was aware of the defendant's medical status when he allowed the motion.  The defendant was later granted medical parole.

such as jurors, during the trial. Second, the prosecutor suggested that the defendant's proposed order granting the defendant's request for postconviction forensic testing might not be acceptable to the State police or to its crime laboratory (crime lab). In the end, the judge asked the parties to work together to submit a proposed order.

Ultimately, the judge allowed the defendant's motion, and an agreed-upon order for postconviction forensic DNA testing entered on June 2, 2022.[3] Among other things, the order required the State police to transmit the materials within ten days, unless otherwise agreed upon by the parties, to Bode Technology Group, Inc. (Bode), the entity authorized to conduct the DNA testing. The New England Innocence Project was ordered to bear the costs of shipping and testing. The Commonwealth did not appeal from the order. See G. L. c. 278A, § 18 ("order allowing or denying a motion for forensic or scientific analysis filed under this chapter shall be a final and appealable order," and notice of appeal must be filed within thirty days).

On June 22, 2022, Bode received what appeared to be all the materials to be tested. But the crime lab did not give Bode approval to access the Combined DNA Index System (CODIS) until approximately nine months later, and as a result, Bode could not

---

[3] The June 2, 2022 order was an agreed-upon substitute for an earlier agreed-upon order entered on May 12, 2022.

begin testing.  When testing began in June 2023, Bode discovered that the fingernail scrapings had not in fact been transmitted.[4]

Meanwhile, the defendant died on September 13, 2022 -- three months after the initial materials were sent to Bode for testing, but before testing could begin due to the lack of CODIS authorization from the crime lab.[5]  Eleven months after the defendant's death, the Commonwealth moved to vacate the order for postconviction testing on the ground that the defendant's entitlement to testing terminated upon his death because such

---

[4] For reasons that the Commonwealth could not explain at oral argument, the fingernail scrapings have never been sent to Bode.

[5] After the defendant's death, an attorney from the New England Innocence Project continued to communicate on the defendant's behalf with both Bode and the prosecutor about the testing, seeking to keep the testing moving forward.  Typically, "[a] client's death terminates an attorney's authority to act on behalf of that client" and "the deceased [client's] attorney may not act on behalf of the deceased, absent a motion by the deceased's legal representative."  Kingara v. Secure Home Health Care Inc., 489 Mass. 393, 395 (2022).  It does not appear that the New England Innocence Project obtained authorization from the defendant's estate to continue to represent the defendant's interests after his death.  The same is true of the attorneys from the private firm that has become involved on appeal, although that firm has sent a postargument letter stating its intention to obtain authorization from the defendant's estate. The Commonwealth has not challenged the footing upon which any of these attorneys have been representing the defendant's interests after his death, and we accordingly do not consider the issue, see Commonwealth v. Hernandez, 481 Mass. 582, 584 n.6 (2019), while cautioning the bar that, as a general matter, a lawyer may not continue to represent a deceased client without authorization from the client's estate.

orders "become[] null and void once the defendant has passed away."[6]

The defendant opposed the motion to vacate on the grounds that (1) the Commonwealth did not contest the validity of the testing order as of the date it was issued, nor did it challenge the factual bases upon which the testing order was originally issued; (2) the delay in testing was caused by the Commonwealth, not the defendant; (3) all parties knew of the defendant's terminal condition at the time the testing order issued; (4) DNA testing might lead to information pertinent to the unsolved murders of nine other women in the greater New Bedford area in 1988 and 1989, around the time of the victim's murder; (5) DNA testing could potentially reveal the truth about the victim's murder, which would benefit not only the defendant but also the public at large; (6) if the defendant were to be exonerated by the DNA testing, the defendant's family might be entitled to some form of compensation for the defendant's wrongful

---

[6] The Commonwealth has not moved for a stay of the testing order pending appeal, see Mass. R. A. P. 6, as appearing in 494 Mass. 1601 (2024), and Mass. R. Crim. P. 31, as appearing in 454 Mass. 1501 (2009), and it is unclear from the appellate record whether, in the absence of a stay, the Commonwealth or Bode have continued to comply with the testing order. The defendant has not raised any issue in this regard, and we accordingly do not consider the issue.

conviction; and (7) the New England Innocence Project was paying for the testing.

After a hearing, the judge denied the motion to vacate in a margin order "for the reasons stated in the defendant's opposition." The Commonwealth thereafter filed a petition pursuant to G. L. c. 278, § 33E, seeking leave to pursue an appeal to this court, which the single justice allowed.

Discussion. The Commonwealth argues that where a defendant dies after postconviction testing has been properly ordered pursuant to G. L. c. 278A but before it is completed, a judge is required to vacate the testing order because an order for postconviction testing pursuant to G. L. c. 278A expires with the defendant. In the alternative, the Commonwealth contends that the judge abused his discretion in denying the motion to vacate because no plausible result of the testing would exonerate the defendant or inculpate a third party.

General Laws c. 278A was enacted "in the wake of national recognition that 'DNA testing has an unparalleled ability both to exonerate the wrongly convicted and to identify the guilty.'" Commonwealth v. Wade, 467 Mass. 496, 497 (2014), S.C., 475 Mass. 54 (2016), quoting District Attorney's Office for the Third Judicial Dist. v. Osborne, 557 U.S. 52, 55 (2009). "[T]he Legislature's stated purpose in enacting G. L. c. 278A was 'to remedy the injustice of wrongful convictions of factually

innocent persons by allowing access to analyses of biological material with newer forensic and scientific techniques . . . [to] provide a more reliable basis for establishing a factually correct verdict than the evidence available at the time of the original conviction.'"  Commonwealth v. Williams, 481 Mass. 799, 804 (2019), quoting Wade, 467 Mass. at 504.

General Laws c. 278A creates a two-step process by which a movant may seek to obtain an order for postconviction forensic testing.  Williams, 481 Mass. at 800.  But only certain persons have standing to file a motion to initiate that two-step process.  Specifically, a motion seeking such testing pursuant to G. L. c. 278A may be filed only if the movant "(1) has been convicted of a criminal offense in a court of the commonwealth; (2) is incarcerated in a state prison, house of correction, is on parole or probation or whose liberty has otherwise been restrained as the result of a conviction; and (3) asserts factual innocence of the crime for which the person has been convicted."  G. L. c. 278A, § 2.  The second of these requirements -- phrased, as it is, in the present tense -- necessarily confines the class of eligible movants to persons who are alive at the time of filing.  See Commonwealth v. Johnson, 482 Mass. 830, 836 (2019) (person has standing to pursue relief under G. L. c. 278A when "his or her liberty has

been restrained 'as the result of' a conviction but for which he or she would not be incarcerated").

Although only a living person has standing to file a motion for postconviction forensic testing, the statute is silent concerning whether a testing order -- validly obtained by a living movant -- may later be terminated before testing is completed and, if so, under what circumstances. And, more specifically, the statute nowhere states that an order for forensic testing properly issued pursuant to its provisions automatically expires upon a defendant's death or that a judge is required to vacate such an order because of the defendant's subsequent death. Nonetheless, the Commonwealth contends that we should read such a provision into the statute.

"We do not read into [a] statute a provision which the Legislature did not see fit to put there, nor add words that the Legislature had an option to, but chose not to include." Commonwealth v. Dones, 492 Mass. 291, 297 (2023), quoting Williams, 481 Mass. at 807-808. There are several reasons to hew to that principle here. First, although the first paragraph of § 2 is explicit as to who has standing to file a motion seeking postconviction testing, the second paragraph provides that G. L. c. 278A "shall not be construed to prohibit the performance of forensic or scientific analysis under any other circumstances, including by agreement between the person

convicted of a criminal offense and the prosecuting attorney" (emphasis added).  G. L. c. 278A, § 2.  In other words, while the first paragraph of § 2 imposes requirements on the movant at the time he or she files a motion for postconviction testing (and those requirements cannot be satisfied except by living persons), the second paragraph leaves open the ability to obtain testing in "any" other circumstance.  See Bank of N.Y. Mellon v. King, 485 Mass. 37, 46 (2020), quoting Ali v. Federal Bur. of Prisons, 552 U.S. 214, 219 (2008) ("Read naturally, the word 'any' has an expansive meaning, that is, one or some indiscriminately of whatever kind" [quotation omitted]).  The language, structure, and relationship of the two paragraphs plainly indicate that, while the Legislature intended to limit the universe of persons entitled to file a G. L. c. 278A motion, that limitation was not intended to foreclose postconviction testing in other circumstances.

We need not determine here the precise contours of the phrase "any other circumstances" as it is used in the second paragraph of § 2, nor need we determine the range of situations that the phrase may encompass.  It is enough to say that the second paragraph of § 2 is sufficiently broad that it is inconsistent with the Commonwealth's position that an order for forensic testing -- validly obtained by a person who met the requirements imposed by the first paragraph of § 2 at the time

of filing -- necessarily expires upon the movant's subsequent death.[7]

Second, we have repeatedly emphasized the broad remedial purpose of G. L. c. 278A, and that purpose would not be furthered by importing into the statute a provision that would cause an otherwise valid testing order to terminate automatically upon a defendant's death. Although a defendant's death will extinguish his or her own interest in the outcome of testing in the sense that the conviction can no longer be set aside, see Commonwealth v. Hernandez, 481 Mass. 582, 583 (2019); Commonwealth v. De La Zerda, 416 Mass. 247, 250-251 (1993),

---

[7] The postconviction testing statutes of four other States contain language similar to that of the second paragraph of § 2. See G. L. c. 278A, § 2, second par. ("This chapter shall not be construed to prohibit the performance of forensic or scientific analysis under any other circumstances, including by agreement between the person convicted of a criminal offense and the prosecuting attorney"); Neb. Rev. Stat. § 29-4124 ("Nothing in the DNA Testing Act shall be construed to limit the circumstances under which a person may obtain DNA testing or other postconviction relief under any other provision of law"); N.H. Rev. Stat. Ann. § 651-D:2(VII) ("Nothing in this chapter shall be construed to limit the circumstances under which a person may obtain DNA testing or other post-conviction relief under any other provision of state or federal law"); Ohio Rev. Code Ann. § 2953.84 ("The provisions . . . are not the exclusive means by which an offender may obtain postconviction DNA testing, and the provisions of those sections do not limit or affect any other means by which an offender may obtain postconviction DNA testing"); Or. Rev. Stat. § 138.690(6) ("[The statute is] not the exclusive means by which a person convicted of a crime may obtain post-conviction DNA testing, and nothing in [the statute] limits or affects any other means by which a person convicted of a crime may obtain post-conviction DNA testing").

society's interest in identifying any potential third-party culprits continues regardless of the defendant's death, see Commonwealth v. Moffat, 478 Mass. 292, 301 (2017), S.C., 486 Mass. 193 (2020) ("We do not suggest that postconviction forensic testing under G. L. c. 278A is limited to direct evidence of the perpetrator's identity. . . .  [D]epending on the facts of a particular case, . . . DNA evidence could be used in conjunction with other evidence to establish the identity of a third party").

Third, we have previously demonstrated a reluctance to import limiting provisions into G. L. c. 278A where they would be inconsistent with a liberal reading of the statute.  See Johnson, 482 Mass. at 835 (declining to read word "direct" into G. L. c. 278A where doing so would be inconsistent with liberal reading of statute).  Such is the case here.  It would be a cramped reading of the statute to extinguish automatically the potential benefits of a G. L. c. 278A order, including potential benefits to society, simply because the defendant died before the object of the order could be accomplished, particularly where the defendant was not the cause of the delay.

For these reasons, we decline to read into G. L. c. 278A a provision automatically terminating a previously issued order for postconviction forensic testing upon a defendant's death. Our conclusion in this regard, however, does not mean that a

judge is foreclosed from exercising his or her inherent authority to reconsider or vacate an earlier forensic testing order in light of changed circumstances, which may include the defendant's death. Where, as here, a statute neither authorizes nor precludes reconsideration, a judge generally may exercise inherent authority to reconsider the judge's own earlier orders in light of a significant change in circumstances. See Commonwealth v. Lougee, 485 Mass. 70, 82-83 (2020) (because G. L. c. 276, § 58B, neither precludes nor authorizes reconsideration of pretrial detention orders, judges may exercise their inherent authority to reconsider such orders). See also Committee for Pub. Counsel Servs. v. Chief Justice of the Trial Court (No. 1), 484 Mass. 431, 450, S.C., 484 Mass. 1029 (2020), quoting Commonwealth v. Cronk, 396 Mass. 194, 196 (1985) ("While the Massachusetts Rules of Criminal Procedure do not expressly permit a judge to rehear a matter, no policy prohibits reconsideration of an order or judgment in appropriate circumstances"). The boundaries of a judge's inherent authority are "established on a case-by-case basis" considering the particular circumstances presented. Commonwealth v. Charles, 466 Mass. 63, 73 (2013).

The particular changed circumstance here was the death of the defendant with its attendant result that he could no longer challenge his conviction. See supra. This is a sufficiently

significant change in circumstance to permit a judge to exercise inherent authority to reconsider or vacate his or her previous order allowing forensic testing under G. L. c. 278A. A judge's decision allowing or denying reconsideration or vacatur in such circumstances will be reviewed for abuse of discretion. Cf. Moffat, 478 Mass. at 301 (in reviewing judge's determination that information was not "material" to perpetrator's identity, "a decision on a motion filed under G. L. c. 278A, § 7, is not insulated from any exercise of discretion by the motion judge"); Commonwealth v. Arriaga, 438 Mass. 556, 569-570 (2003) (denial of motion for reconsideration regarding postconviction discovery under Mass. R. Crim. P. 30, as appearing in 435 Mass. 1501 [2001], reviewed for abuse of discretion).

What remains is whether the judge abused his discretion in denying the Commonwealth's motion to vacate in the circumstances presented here. We look to determine whether the judge "made a clear error of judgment in weighing the factors relevant to the decision, such that the decision falls outside the range of reasonable alternatives" (citation and quotation omitted). L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

We discern no abuse of discretion in light of the following circumstances, which the judge could -- and did -- consider. First, the defendant met all the requirements for obtaining access to postconviction forensic testing under G. L. c. 278A,

§ 2, at the time he moved for such relief and at the time he obtained it.  Indeed, the Commonwealth does not now, nor has it ever, challenged the defendant's entitlement to postconviction forensic DNA testing either as of the date he moved for such testing or as of the date on which the judge allowed it.  The Commonwealth presented only limited opposition to the defendant's motion, joined in an agreed-upon order, and did not appeal from the testing order.

Second, at the time the judge allowed the defendant's motion for forensic testing, all parties and the judge knew of the defendant's terminal illness, and the judge had allowed the defendant's motion to expedite consideration of the G. L. c. 278A motion.  Furthermore, the testing order required prompt action by specifying that the materials be sent to Bode within ten days of entry of the order.

Third, there was no suggestion, let alone showing, that the delay in completing the testing was attributable to the defendant.  To the contrary, the undisputed record supported a conclusion that the delay was caused by the timing of the Commonwealth's approval to access CODIS and its failure to transmit the fingernail scrapings.  For all that appears, the testing could have been completed before the defendant's death had it not been for the Commonwealth's delay.

Fourth, the judge could assess the Commonwealth's delay against the statutory mandate that "analysis shall take place as soon as practicable" upon allowance of a testing motion.  G. L. c. 278A, § 9.  See Oberlies v. Attorney Gen., 479 Mass. 823, 838 n.13 (2018) ("It is well established that use of the word 'shall' indicates a mandatory duty").  The judge could further consider the Commonwealth's delay in taking the steps necessary to permit Bode to complete testing in tandem with its delay in moving to vacate and the fact that it never sought to stay the testing.

Fifth, the judge could consider that the cost of testing was not being borne by the Commonwealth.  Cf. State v. Reed, 2024-Ohio-5412, ¶¶ 25-28 (Ct. App.) (postconviction forensic testing not paid for by State was not required to meet statutory requirements where statute allows testing by "any other means"); State v. Gavin, 2022-Ohio-3027, ¶ 48 (Ct. App.) (same).

Sixth, the judge could consider that, despite the defendant's death, a societal interest remained in the outcome of the forensic testing given that there remain nine unsolved murders from the same period and region, and that the families

of the victims of those murders expressed an interest in the outcome of the forensic testing.[8]

To be sure, as the Commonwealth points out, once the defendant died, the results of the forensic testing were of little, if any, practical utility to him because he could no longer use the results to maintain a collateral attack on his convictions via a motion for a new trial under Mass. R. Crim. P. 30.  But the judge could weigh this in the context of the statutory scheme and determine that, standing alone, it was not dispositive.  General Laws c. 278A created a new avenue to obtain access to postconviction testing, and a motion brought under that chapter "is conceived as separate from the trial process and any postconviction proceedings challenging the underlying conviction."  Wade, 467 Mass. at 505.  See Moffat, 478 Mass. at 301 ("The Legislature intended G. L. c. 278A to make postconviction forensic testing easier and faster than it had been for defendants who sought such testing in conjunction with motions for new trials pursuant to Mass. R. Crim. P. 30 . . .").  See also Commonwealth v. Linton, 483 Mass. 227, 242 (2019) (same).  Although test results obtained as a result of an

---

[8] Family members of victims of the so-called New Bedford highway murders have filed an amicus brief with this court, continuing to express their interest in the forensic DNA testing ordered by the judge below.

order issued pursuant to G. L. c. 278A may support a subsequent motion for a new trial under Mass. R. Crim. P. 30, a person who meets the requirements of the statute may obtain its relief regardless of whether the results may later turn out to be unfavorable to him or her (in which case they would not support a collateral challenge to the conviction) or favorable (in which case they might).  See Commonwealth v. Ramos, 490 Mass. 818, 824 (2022) ("defendants need not demonstrate that the requested testing could result in evidence that would justify a new trial"); Wade, 467 Mass. at 508 (whether defendant is likely to obtain favorable testing "result is not relevant to the analysis; what is relevant is that DNA testing has the potential to produce a result that is material to [the defendant's] identification as the perpetrator").  The Legislature "did not condition access to such testing on some degree of proof that the test results will raise doubt about the conviction."  Wade, 467 Mass. at 509.  See Ramos, 490 Mass. at 825.

Conclusion.  For the reasons set out above, we conclude that an order for postconviction forensic testing pursuant to G. L. c. 278A does not expire automatically upon a defendant's death but that a judge retains inherent authority to reconsider or vacate such an order in light of changed circumstances, which may include the death of the defendant before testing has been completed.  We further conclude that, in the circumstances

presented here, the judge did not abuse his discretion in denying the Commonwealth's motion to vacate his earlier order for postconviction forensic DNA testing under G. L. c. 278A, and we therefore affirm the order denying the Commonwealth's motion.

So ordered.